KENNETH CLINTON WILDMAN'S APPEAL FROM PROBATE (ESTATE OF DAVID BURR DISBROW).

Third Judicial District, New Haven, June Term, 1930.

WHEELER, C. J., MALTBIE, HAINES, HINMAN AND BANKS, Js.

Argued June 6th—decided July 9th, 1930.

*Clifford B. Wilson,* for the appellant.

*John T. Dwyer,* for the appellee (Disbrow, administratrix).

*Harry R. Sherwood,* for the appellee (Ella F. Hull).

BANKS, J. Questions eight and nine involve the right of Ella J. Disbrow, widow of Elmer B. Disbrow, to share in the real estate distributed to him, as his nearest of kin. While she was made a party to the action as administratrix of his estate, she is not a party, individually, and her rights cannot therefore be adjudicated in this action. If this were an independent action for the construction of the will of David B. Disbrow it might be sent back to have Ella J. Disbrow made a party. Since it is an appeal from an order of the Court of Probate the Superior Court cannot enlarge the scope of the appeal, and the defect in parties cannot be cured by remanding the case to that court.

The fourth paragraph of the will provides for the contingency of the death of one of the children of the testator "before coming into possession of their said one-third part." · Since that contingency has not occurred there is no need to answer question two which asks for the construction of this paragraph of the will.

· This leaves the principal question to be answered that of whether Kenneth, the adopted son of Clara Wildman, takes the one-third share in the estate of which she had the life use, as her lineal descendant or nearest of kin. Whether the words "lineal descendants" and "nearest of kin" are to be construed as including an adopted child depends upon the intention of the testator to be ascertained from the language of the will read in the light of all the circumstances surrounding the testator at the time of its execution. In their ordinary and primary meaning they connote

relationship by blood and will be so construed unless it appears that the testator intended to use them in a more extended sense. Our statute of adoption (§ 4879) provides that an adopted child becomes the legal child of its adopting parents with the right of inheritance from them and their relatives the same as though it were their natural child. The testator is presumed to have known of this statute, which was in existence when this will was executed (Revision of 1888, § 472), and it is contended that he used the terms "lineal descendants" and "nearest of kin" as the equivalent of "children" and as including a child by adoption. A presumption that such was his intention does not arise from the mere assumption of his knowledge of our law of adoption. The existence of the law at the time of the execution of the will is one of the facts to be considered among the circumstances surrounding the testator, but by itself will not determine the testator's intention. *Middletown Trust Co. v. Gaffey,* 96 Conn. 61, 71, 112 Atl. 689. Where the testator is the adopting parent it is reasonable to presume, especially under an adoption statute as broad as ours, that, in the use of the word "child" or its equivalent in his will, he intends to include the child whom the law, by his own act of adoption, has made his legal child. Such presumption does not prevail where the testator is a stranger to the adoption, especially, and for obvious reasons, when the adoption took place after the testator's death. *Middletown Trust Co. v. Gaffey, supra,* and cases there cited; see also notes in 27 L. R. A. (N. S.) 1159, L. R. A. 1918B, 123, 5 A. L. R. 1280. This will was executed February 8th, 1896, the testator died February 28th, 1904, and the appellant was adopted by Clara Wildman on August 15th, 1918, fourteen years after the testator's death and twenty-two years after the execution of his will. As we said in

the *Gaffey* case, this is a circumstance of controlling importance. We are seeking to ascertain the intention of the testator at the time he made his will. His daughter Clara was then married. The will provides that upon her death the portion of the estate of which she was given the life use should go to her lineal descendants or if there were none to her nearest of kin. We find nothing in the will to indicate that the testator used these words in any other than their primary meaning or that he had in mind the possibility of the adoption of a child by either of his children. The will provides that no husband of either of the testator's daughters shall ever have any control over any of his estate, and that his homestead shall not be sold during the lifetime of any of his children, but shall after their decease be the property of some of their lineal descendants, or if there be none then of the nearest of kin. These provisions, and the entire plan of the will, disclose an intention of the testator to confine the objects of his bounty to those of his own blood. Nowhere in the will, or in the circumstances surrounding the testator at the time of its execution, do we find any indication that he contemplated that a stranger to his blood should have any share in his estate. Under such circumstances there are no facts from which could be drawn an inference that he intended such result.

In *Ansonia National Bank* v. *Kunkel,* 105 Conn. 744, 136 Atl. 588, when the will was executed a sister of the testator, who was then sixty-one years old and had no children of her own blood, had an adopted daughter who for many years had been regarded as a member of the family and had always been, and continued thereafter to be, on the closest terms of intimacy and affection with the testator who knew and approved of the adoption, acted as godfather at her baptism, and exhibited unusual fondness for her. These and other facts

there present required the conclusion that in a bequest to the sister and "to her issue if she be dead" the testator intended to use the word "issue" in its restricted sense of "children" and to include the adopted daughter. In *Mooney* v. *Tolles*, 111 Conn. 1, 149 Atl. 515, we held that the general plan of the will and the fact that the adoption occurred prior to the death of the testatrix and was approved by her indicated her intention to include an adopted child of one of her sons in certain gifts to the child or children of her sons. The situation here is strikingly similar to that in *Middletown Trust Co.* v. *Gaffey, supra,* where we held that the word "issue" in the will was used in the restricted sense of "children," but that a bequest to the issue of a son of the testator did not include an adopted child of the son when the adoption took place twelve years after the death of the testator.

As to questions 1, 3 and 4, we answer that the words "lineal descendants" in paragraph three of the will and the words "lineal descendants" and "nearest of kin" in paragraphs five and six of the will do not include the adopted son of Clara J. Wildman, and that Ella J. Hull and Elmer B. Disbrow were her nearest of kin. As to question 5 we answer Yes; 6, Yes. Question 7, in view of our conclusion, does not require an answer. As already indicated, Question 2 does not need to be answered, and the absence of Ella J. Disbrow, individually, as a party to this reservation does not permit an answer to questions 8 and 9.

In this opinion WHEELER, C. J., and HINMAN, J., concurred.

MALTBIE, J. (dissenting). The testator gave the life use of all of his property to his wife, and after her death, the use of one third to each of his children during his or her life. The fifth paragraph reads as fol-

lows: "When either said Ella, Elmer, or Clara shall decease after gaining possession of said part, then it shall become the actual property of their lineal descendants or if there be none then it shall go to their nearest of kin." In the sixth paragraph he provides that his homestead property should not be conveyed away during the life of any of his children but: "shall be after their decease the actual property of some of their lineal descendants, or if there be none, then to the nearest of kin." In the seventh article he directs that "no husband of said Ella, and no husband of said Clara, shall ever have any control in any form or manner whatsoever in or to any of the aforementioned property."

I agree with the majority opinion in its holding that the appellant, an adopted child of the daughter Clara, could not share in the estate as a "lineal descendant." I cannot agree that he would not take the share in which she had a life use as her "nearest of kin." The gift made to "nearest of kin" by the testator represents his final desire as to the disposition of the property in default of lineal descendants. It is a gift to the person or group coming within that designation, not to any individual or individuals whom he had definitely in mind. The question is very different from that presented where an adopted child claims a share in an estate under the designation of "child or children" because this class is much more restricted than that designated by the words "nearest of kin" and because "child" has no other accepted general meaning except that of a lineal descendant in the first degree. "Nearest of kin" even under the meaning given it in the majority opinion may search out very remote relatives, and it does have a generally accepted meaning which is not dependent upon blood relationship. In *Close* v. *Benham,* 97 Conn. 102, 115 Atl. 626, we discussed the meaning to be accorded the words "next of kin" and

as preliminary to a quotation from an Ohio case, we say that "nearest of kin" and "next of kin" are synonymous. We approved the decision of that court that when used without qualifying words "nearest of kin" meant those entitled to take under the statute of distributions. We say: "We are persuaded that it will carry out the testator's intent more often, if we hold that this term, in the absence of qualifying words, was intended by the testator to include those who fall within the designation in the general speech and understanding of men, rather than in a primary and original sense, as the nearest in blood." I cannot regard this decision other than as a definite repudiation of the position taken in the majority opinion that "nearest of kin" is to be given, as its primary meaning in the construction of wills, the nearest by blood relationship.

If there is anything in the will before us which throws light upon the meaning which the testator gave to the expression, the construction for which I contend is rather fortified than otherwise. When the will was executed he had three living children, of whom two were married and one had four children. If he had only blood relationship in mind, it is not reasonable to suppose that he would have looked beyond those seven or such other children as might be born to his children or grandchildren, that is, that he would look upon blood relationship as going beyond the line of direct descent, except as a remote possibility. That he meant to keep his homestead within that line he makes clear by the sixth paragraph of the will; if he had the same intent with reference to the rest of his property, he would have broadened this paragraph of the will to include it. His express exclusion of the husband of Ella and Clara from any share in the property is significant, for if he had in mind blood relationship alone as the basis of participation in his bounty, there would

have been no need of it. Nor, again, in his substitutionary gift over of the homestead to the "nearest of kin" is it reasonable to suppose that he would have preferred it to go to some remote blood relative rather than to one who by adoption might become the person most closely bound by affection and all ties of family except that of blood to one of his children.

By our statute of adoption "the adopted child becomes, by the fact of adoption, the child in name and in law of its parents, with all the reciprocal rights and duties existing between them as between natural child and parent, and with the right of inheritance between parent and child and their relatives, the same as though such adopted child was the natural child of such adopting parents." *Middletown Trust Co.* v. *Gaffey,* 96 Conn. 61, 70, 112 Atl. 689. In *Mooney* v. *Tolles,* 111 Conn. 1, 149 Atl. 515, in a case in which we held that an adopted child might take under the designation of "child or children" in a will, we say: "Two further rules of testamentary construction are relevant. 'One of these is that heirs at law are not to be disinherited unless the intent to do so is clear and strong. . . . Again, as an aid to construction where the meaning is in doubt, that construction will be adopted which most nearly conforms to the statute of distribution.' " Two sentences from the Ohio case referred to in *Close* v. *Benham,* and there quoted (p. 106), are particularly applicable: "There is a primary rule applicable to the construction of wills, that the heir at law shall not be disinherited by conjecture but only by express words, or necessary implication. . . . We do not feel inclined to favor a construction, unless it be a necessary one, against all principles of natural justice and against the well settled policy of inheritance as provided by our law." The construction of the words "nearest of kin" in the majority opinion seems to me to be con-

trary to what we say in *Close* v. *Benham*, contrary to the principles of construction I have just quoted, contrary to "natural justice" and contrary to the intent of the testator so far as it can be seen in the will before us.

In this opinion Haines, J., concurred.