WILLIAM B. TROWBRIDGE ET AL., TRUSTEES (WILL OF
JAMES A. TROWBRIDGE) *v.* JAMES A. TROW-
BRIDGE, JR., ET ALS.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, Js.

Argued December 6, 1940—decided January 10, 1941.

*William C. Strong,* for the appellant (defendant
Peter Trowbridge).

*John M. Comley,* for the appellees (named defend-
ant et als.).

MALTBIE, C. J.   James A. Trowbridge died May 30, 1931.   He left four sons, viz: William B., who was married but had no children; James A. Jr., who never married; Arthur, who was married and had four children; and Gardiner, who was married and, having no children born of the marriage, had on July 8, 1930, adopted a boy, Peter, then four or five years of age. James A. Trowbridge left an estate which was inventoried at more than $9,000,000 and a will executed in 1921.   In this instrument he directed that the residue of his estate be divided into four equal parts; one part he gave absolutely to his son Arthur and the other three parts he gave to trustees, one to be held in trust for the benefit of each of his other sons during his life. The will then provided as follows: "Upon the death of any of these my three sons, I give, devise and bequeath the undivided one-fourth part which has been held in trust for him to his lawful issue, per stirpes, and in the event that he leaves no lawful issue him surviving then to my other children, or to the surviving lawful issue, per stirpes, of such of my children as shall have died before him.   In the event of the death before me of any of my children leaving lawful issue living at the time of my death, such lawful issue shall take the share devised to its parent, per stirpes.   In the event of the death before me of any of my children leaving no lawful issue, then all the property mentioned in this paragraph of my will shall be divided into as many equal parts as I have children me surviving or lawful issue of such other child as may have died, such issue to take the share their father would have taken if living at the time of my death."   Gardiner died September 14, 1938, and the trustees brought this action to have determined the question whether his adopted son Peter is entitled to receive the principal of the trust fund established

for Gardiner under the gift to his "lawful issue." The trial court decided that he was not, and this appeal is from that judgment.

The finding, in which no material change can be made, may be summarized as follows: The testator was eighty-eight years old when he died. He had retired from business in 1902. Prior to 1921 he had lived part of the time in New York and part of the time in Connecticut. In that year, fearful of the application upon his death to his large bond holdings of the estate penalty tax in Connecticut, he determined to make New York his domicil, took various steps to this end, and thereafter believed that he was domiciled there and that his estate would be administered under the laws of that state. During the last years of his life, however, he lived exclusively in Connecticut and in litigation following his death it was finally adjudged that he was domiciled in Connecticut when he died. *In re Trowbridge's Estate*, 266 N. Y. 283, 194 N. E. 756. His son Gardiner married in 1915 and thereafter the testator and his wife were on very friendly terms with him and his wife. Previous to 1925 Mrs. Gardiner Trowbridge had discussed with the testator the possibility of her having chlidren. In 1926 she and her husband took Peter into their home from an adoption nursery. He was immediately given the name of Peter Trowbridge and thereafter was treated by them as a son. The testator had a strong feeling for the integrity of his family group and did not readily embrace others within his interests. He was, however, on terms of intimacy with Peter and showed no partiality as between him and his grandchildren born to his son Arthur. He knew that Mr. and Mrs. Gardiner Trowbridge were thinking of adopting Peter but did not know of the actual adoption. He frequently expressed to his secretary disapproval

of such a course on their part. On one occasion he obtained advice from a New York attorney as to the effect Peter's adoption would have under the inheritance laws of that state and was told that by those laws Peter would not inherit. In 1930 his son Arthur became mentally ill and the testator contemplated making a new will and had a draft prepared. In that draft was included the following provision: "It is my intention that no adopted child shall inherit under this will." Arthur's health improved and no new will was executed by the testator. He frequently told Mrs. Arthur Trowbridge that her children were his only grandchildren and that he wanted them to know the value of money as they would inherit all his estate.

"Issue" primarily signifies descendants of the body. *Middletown Trust Co.* v. *Gaffey*, 96 Conn. 61, 66, 112 Atl. 689. We cannot give to the word as used in this will a meaning which would include the adopted child Peter unless the circumstances clearly indicate that the testator so intended. *First National Bank & Trust Co.* v. *Baker*, 124 Conn. 577, 582, 1 Atl. (2d) 283. The use in the will of the words "parent" and "father" in connection with the word "issue" is insufficient of itself to give to the last word the meaning of "children." *Dolbeare* v. *Dolbeare*, 124 Conn. 286, 289, 199 Atl. 555. When the will was executed in 1921 the testator had two living grandchildren and the advent into the family group of an adopted child was not even contemplated. If we look to his intention at the time when he executed the will, there is a complete lack of any circumstance indicating that he meant to include an adopted child in the words "lawful issue." If we regard the will as speaking from his death, the intervening circumstances fail to show an intent to give those words such a meaning. If Peter should be held to be "lawful issue," he alone would

represent Gardiner's stock in any distribution of the shares of the testator's sons William and James, Jr., should they die without issue, as is not at all unlikely, and was not unlikely when the testator died, in view of their ages and the fact that they had no children; and under the provision for a per stirpes distribution in such an event, Peter would take a share of the funds set apart for them equal to that given to Arthur or, should he be deceased, equal to that of his children as a group; and a mathematical calculation easily discloses the result that Peter would, in that event, take a far larger share of the testator's estate than any of his grandchildren of his own blood, a result which the testator could hardly have intended.

In *Middletown Trust Co.* v. *Gaffey,* 96 Conn. 61, 112 Atl. 689, and in *Ansonia National Bank* v. *Kunkel,* 105 Conn. 744, 136 Atl. 588, we had before us the question whether an adopted child was entitled to take a share in an estate as "issue" of a life beneficiary; in both cases we held that the word was used in the will in question in the sense of "children"; and in the first we held that the adopted child was not entitled to take and in the second that he was. In *Mooney* v. *Tolles,* 111 Conn. 1, 149 Atl. 515, we held that an adopted child was included in a provision making a gift to the "child or children" of the testatrix's son; and in *Wildman's Appeal,* 111 Conn. 683, 151 Atl. 265, we held that an adopted child could not take as a "lineal descendant" or "nearest of kin" of one to whom a life use was given. Our decisions in these cases were determined by the intent of the testator in the use of the particular phrase in question as evidenced by the surrounding circumstances and in view of certain presumptions of intent. The presumptions referred to are somewhat contradictory. Such presumptions, except as they may tend to produce

some measure of certainty as to the meaning which will be judicially given to the words used by the testator in his will, merely state considerations which experience has shown are apt to be in the minds of testators, to be given such weight in a particular case as its circumstances justify; they are merely aids to construction which cannot prevail over an intent fairly deducible from the terms of the will read in the light of the surrounding circumstances. *Lee* v. *Lee*, 88 Conn. 404, 406, 91 Atl. 269; *Butler* v. *Flint*, 91 Conn. 630, 636, 101 Atl. 19; *Fidelity Title & Trust Co.* v. *Young*, 101 Conn. 359, 364, 125 Atl. 871; *Hull* v. *Hull*, id., 481, 485, 126 Atl. 699; *Ansonia National Bank* v. *Kunkel*, supra, 750. None of the rules of presumed intent referred to in the cases above cited wherein we considered the rights of an adopted child or invoked in the appellant's very able brief avail to indicate that the testator in this case meant to include Peter within the meaning of the words "lawful issue" as used in the will, and there was no error in the trial court's conclusion to this effect.

The appellant assigns as error the admission of certain testimony of the testator's secretary with reference to the will which, in 1930, the testator contemplated making; the witness testified that the testator stated that he wanted changes made in the old will which would place in trust the share of his son Arthur in the residue, given to him outright in the will, and which would make it clear that Peter would not inherit; and that in the draft then prepared was a provision that no adopted child should inherit under the will. This testimony was admitted for the purpose of showing the testator's attitude toward Peter as an adopted child. We have held that evidence of the intention of a testator is inadmissible where it does not find expression in the will or where it consists of declarations of

the testator as to the meaning of the words used, or where it seeks to give to the words used a meaning which goes beyond any reasonable construction which they can bear or where it gives them a significance different from their usual and ordinary meaning, unless, on reading the will in the light of surrounding circumstances, a latent ambiguity appears. *McDermott* v. *Scully*, 91 Conn. 45, 50, 98 Atl. 350; *Day* v. *Webler*, 93 Conn. 308, 311, 105 Atl. 618; *Mahoney* v. *Mahoney*, 98 Conn. 525, 537, 120 Atl. 342; *Stearns* v. *Stearns*, 103 Conn. 213, 219, 220, 130 Atl. 112; *Central Hanover Bank & Trust Co.* v. *Nesbit*, 121 Conn. 682, 687, 186 Atl. 643. The whole contention of the appellant in this case is based on a claim of latent ambiguity in the use of the words "lawful issue." The testimony in question here did not seek to give effect to an intention which does not find expression in the will, but to show the testator's attitude toward the adoption of Peter. It was properly admitted. *First National Bank & Trust Co.* v. *Baker*, 124 Conn. 577, 586, 1 Atl. (2d) 283.

There is no error.

No costs will be taxed in this court to either party.

In this opinion the other judges concurred.