THE BRIDGEPORT-CITY TRUST COMPANY, ADMINISTRATOR C.T.A. AND TRUSTEE (ESTATE OF ANDREW M. COOPER) *v.* ELIZABETH J. BUCHTENKIRK ET AL.

INGLIS, C. J., O'SULLIVAN, WYNNE, DALY and ALCORN, Js.

Argued May 9—decided June 25, 1956

*Johnson Stoddard,* with whom, on the brief, was *Alvin C. Breul, Jr.,* for the appellant (defendant Margaret J. Haentze).

*Norwick R. G. Goodspeed,* with whom, on the brief,

was *J. Kenneth Bradley,* for the appellants-appellees (named defendant et al.).

*John F. McGowan,* for the appellees (defendants Samuel S. Lyons et al.).

*Albert L. Coles,* for the appellees (defendants Alma S. Lyons et al.).

*W. Bradley Morehouse* appeared for the plaintiff.

O'SULLIVAN, J.   Andrew M. Cooper, a resident of Bridgeport, died on July 21, 1926, at the age of fifty-four, leaving no issue.   His widow, Sara, died on November 3, 1952.   On January 11, 1924, Cooper had executed a will which was admitted to probate on July 28, 1926. The plaintiff, as administrator c.t.a. and trustee, instituted this action to obtain a construction of article third of the will.   From the judgment rendered in answering eight questions submitted to the court,[1] two separate appeals have been

---

[1] The questions and answers were as follows:

"(a) Is Margaret J. Haentze, the adopted daughter of B. Franklin Jarrett, his 'lineal descendant' as that term is used in Article Third? Answer: No.

"(b) Does the term 'the others surviving,' as used in Article Third, exclude all but the survivors among the expressly named collateral relatives? Answer: No.

"(c) If the answer to question (b) is in the negative, does said term 'the others surviving' include 'the lineal descendants per stirpes' of all expressly named collateral relatives who died before the termination of the trust? Answer: Yes.

"(d) Should the share of income of the trust which would be received under Article Third by Thomas A. Lyons if he were living be divided only among the named persons and per stirpital lineal descendants of deceased named persons with whom he was to share 'one part'? Answer: Yes.

"(e) If the answer to (d) above is in the negative, should such share be divided among all the income-beneficiaries, whether expressly

prosecuted by different defendants. We first consider the one taken by Margaret J. Haentze, the adopted daughter of B. Franklin Jarrett, deceased, and Blanche G. Jarrett, also deceased. Margaret attacks the answer to question (a). By that answer the court determined that she is not entitled to take her adoptive father's share as his "lineal descendant."

Under article third of his will, Cooper set up a residuary trust for the benefit of his widow, and others, as long as she lived. He further provided that upon her death the net income which would be available after paying certain annuities should be given "to such of the following named persons as shall be living and to the lineal descendants per stirpes of such of them as shall be dead, in the following named proportions . . . ." He first listed eight persons by name, to each of whom he gave a one-ninth part of the net income. Among them

named persons or per stirpital lineal descendants of such of them as are deceased? (Not answered because of answer to [d] above.)

"(f) In the case of the death of an income-beneficiary without any surviving lineal descendants, what effect is to be given to the term 'proportionately increased' as used in Article Third, in determining the division among surviving income-beneficiaries of the part or share of a part which such income-beneficiary would receive if he were living? Answer: Upon the death of an income-beneficiary without any surviving lineal descendant, the part bequeathed to him shall be divided equally among the parts of the income-beneficiaries who survive or who die leaving lineal descendants.

"(g) If the amount of each of the equal parts of the remainder distributable upon the termination of the trust would be determinable by dividing the whole by six if all of the named remaindermen were then living, would the amount of each such part be determinable by dividing the whole by five if one of the named remaindermen had previously died without any then surviving lineal descendants? Answer: Yes.

"(h) If the answer to (g) is in the negative, would there then be any intestacy with respect to one-sixth of the remainder of the trust? Answer: No."

was B. Franklin Jarrett. The testator then named five others who, as a group, were to receive a one-ninth part. These payments were to continue until the death of the survivor of Mary A. Cooper, his sister, and Elizabeth J. Forbus (now Elizabeth Buchtenkirk), his wife's niece, when the trust was to terminate. As to the one-ninth part of the income given to B. Franklin Jarrett, the will provided: "[I]n case of the death of my wife's said brother, B. Franklin Jarrett, prior to the death of his wife, Blanche Grant Jarrett, the portion designed for him shall be paid to her during life and thereafter to his lineal descendants, per stirpes, as hereinbefore provided . . . ." B. Franklin Jarrett died on December 4, 1946, and his wife, Blanche, on October 23, 1953.

In their ordinary and primary meaning, the words "lineal descendants" connote relationship by blood, and they will be so construed unless it clearly appears that the testator used them in a more extended sense. *Wildman's Appeal*, 111 Conn. 683, 686, 151 A. 265. The question, then, is whether the language of the will, read in the light of all the circumstances surrounding the testator at the time of its execution, clearly demonstrates an intention that the words "lineal descendants" should include adopted children. *Morgan* v. *Keefe*, 135 Conn. 254, 257, 63 A.2d 148; *Ansonia National Bank* v. *Kunkel*, 105 Conn. 744, 750, 136 A. 588.

To answer this question, we first turn to the finding, which cannot be corrected and which discloses the following facts: After her father's death in 1914, Margaret J. Haentze, then less than five years old, went to live with Mr. and Mrs. B. Franklin Jarrett, in Philadelphia, who thereafter treated her as their own child. Jarrett was a brother of the testator's wife, and Mrs. Jarrett was the sister of Margaret's

mother, Lida G. Ilko. Between 1915 and 1920, the testator and his wife made many visits to the home of the latter's mother, who lived near Philadelphia. On these occasions the Coopers also visited the Jarretts. Margaret was present at these times, and the Coopers treated her in a friendly and kindly fashion. During these visits, Margaret referred to them as "Uncle Andrew" and "Aunt Sara." Over the years, it was a Christmas practice of the Coopers to send gifts to the Jarretts, and they always included a gift for Margaret. Following the death of Mrs. Cooper's mother in 1920, the Jarretts and Margaret made infrequent visits to the Coopers in Connecticut. During the summer of 1921, while the Coopers were on an extended trip to Europe, they allowed the Jarretts and Margaret to occupy their cottage at Fairfield Beach. In the summer of 1922, the Jarretts and Margaret spent a week with the Coopers at the same cottage. On this occasion, Cooper introduced Margaret as his niece to his neighbors. Margaret was adopted by the Jarretts on October 6, 1925.

Cooper did not know that the Jarretts proposed to adopt Margaret until several months after he had executed his will. Either late in 1924 or early in 1925, the matter of adoption was discussed between the Jarretts and Mrs. Ilko, Margaret's mother, in Cooper's presence. Cooper told Mrs. Ilko that she was doing a wonderful thing for the Jarretts and that Margaret would be well cared for by them. Cooper was a careful, meticulous businessman. Reticent about his personal affairs, he was not prone to discuss them even with members of his own family. He was very precise in the handling of his business matters. In his will, he made specific provision for Mr. and Mrs. Jarrett, for the widow of his brother,

Thomas R. Cooper, and for Flora A. Lyons and Harriet L. Shumard, stepchildren of his sister Ann. He also made specific provision for four beneficiaries who were not related by blood to himself or his wife. At no time did he say to anyone that Margaret's adoption would make her a beneficiary under his will. On the contrary, shortly before he died, as set forth in a paragraph of the finding, his wife said to him that it was too bad no provision had been made for Margaret in his will. He stated, in reply, that he had already given in to his wife by including Mrs. Jarrett as a legatee and that he would not do any more. The facts incorporated in this paragraph of the finding are hotly challenged by Margaret, although she concedes that evidence to support them was introduced at the trial. The reason for the challenge and the effort to have the paragraph stricken is obvious. "If actually such [facts are] found," runs the brief prepared by her counsel, "appellant's appeal is doomed, and no need exists for construction so far as Margaret is concerned. ... Clearly [the] paragraph shows an intention not to include Margaret and . . . is practically tantamount to a determination of her claim to take as a 'lineal descendant.'" We are in no position to strike the paragraph for any reason advanced by Margaret. The credibility of witnesses is a matter for the trier. *Ball* v. *Branford,* 142 Conn. 13, 15, 110 A.2d 459.

Weighing the testamentary language in the light of the circumstances surrounding Cooper at the execution of the will, as those circumstances appear from the facts narrated above, we can find no clear indication that he used the words "lineal descendants" in such an extensive sense as to include "adopted children." Indeed, practically everything

indicates the contrary. It is true that the testator was apparently not concerned with blood lines and displayed no marked preference for his own blood relatives. While that is a factor to consider, it is not controlling. The same may be said of any knowledge he may have had concerning the effect of adoption upon the right of an adopted person to inherit. *Wildman's Appeal*, 111 Conn. 683, 687, 151 A. 265. Without laboring the matter further, we are convinced that the testator used the words "lineal descendants" in their ordinary and primary meaning. The court was correct in answering question (a) in the negative.

We now turn to the appeal taken by Elizabeth J. Buchtenkirk (formerly Elizabeth J. Forbus) and five other defendants.[2] They claim to be aggrieved by the answers given by the court to questions (b) to (f), inclusive. Those questions relate to the part of article third which disposes, after the death of the testator's widow, Sara, of the income of the trust until the death of the survivor of the testator's sister, Mary A. Cooper (now deceased), and Elizabeth J. Buchtenkirk, Sara's niece. After setting up three paragraphs, numbered (1), (2) and (3), respectively, in which he provided for payments from the net income to various persons, the testator directed his trustees "(4) to pay in quarter-yearly payments all income not otherwise disposed of under (1), (2) and (3) next above to such of the following named persons as shall be living and to the lineal descendants per stirpes of such of them as shall be dead, in the following named proportions, viz: one part each to my sister, Mary A. Cooper—my wife's niece, Elizabeth Jarrett Forbus

[2] These five defendants are Joseph J. Knowles, Janet C. Farmer, Helen C. Delany, Flora A. Lyons and Harriet L. Shumard.

—my niece, Janet S. Cooper—my brother's widow, Carrie R. Cooper—my niece, Helen Cooper Delany —my wife's nephew, Joseph Jarrett Knowles—my wife's sister, Emma Jarrett Knowles—my wife's brother, B. Franklin Jarrett, and one part divided equally between my nieces, Flora A. Lyons and Harriet Lyons Shumard, and my nephews, Ross C. Lyons, Robert W. Lyons and Thomas A. Lyons, provided, however, that in case of the death of my wife's said brother, B. Franklin Jarrett, prior to the death of his wife, Blanche Grant Jarrett, the portion designed for him shall be paid to her during life and thereafter to his lineal descendants, per stirpes, as hereinbefore provided; upon the death of any of the persons named in this paragraph during the continuance of the trust, but leaving no lineal descendants, the shares of the others surviving shall be proportionately increased." The issue raised by the appeal under discussion is whether the phrase "the others surviving," appearing in the last clause of this quoted material, excludes all but the survivors of the expressly named beneficiaries. In other words, does the phrase exclude the lineal descendants of the beneficiaries who have been mentioned by name?

The testator designated the beneficiaries of the trust at the very beginning of paragraph (4). Referring to them as "such of the following named persons as shall be living and to the lineal descendants per stirpes of such of them as shall be dead," he proceeded to list the names of those comprising "the following named persons." In the concluding clause, segregated from the rest of the paragraph by a semicolon, he provided that upon the death of any of the "persons named in this paragraph," leaving no lineal descendants, the shares of "the others surviving" should be proportionately increased. If the

phrase "persons named in this paragraph" is restricted to those actually listed by name, and if the phrase "the others surviving" is similarly restricted, then the concluding clause in which those phrases appear applies only upon the death of a beneficiary identified by name, and distribution of the share enjoyed during life by one dying without lineal descendants is confined to those surviving beneficiaries who are similarly identified by name; and the distribution should be in the same proportion as their parts bear to each other. If this construction is adopted, it would exclude the lineal descendants of nonsurviving named beneficiaries. On the other hand, if the phrase "persons named in this paragraph" is not restricted as suggested above but embraces, in addition to the expressly named beneficiaries, their lineal descendants, and if the phrase "the others surviving" refers to the expressly named beneficiaries and their lineal descendants alike, then the entire net income above the amount necessary to pay the annuities should be distributed among the surviving beneficiaries identified by name and the lineal descendants of the deceased beneficiaries who were identified by name, per stirpes.

The latter construction is correct. The former takes too narrow a view of the testator's intention as disclosed by the will. It ignores the fact that in the dispositive language at the beginning of paragraph (4) the testator named as beneficiaries not only certain specific persons but also "the lineal descendants per stirpes of such of them [the specific persons] as shall be dead." Obviously, he was unable to list the names of those who were to take as lineal descendants. That would require the foresight of the prophet. Nevertheless, unlisted by name though they were, the lineal descendants were named as

beneficiaries. They were as much "persons named" as were those specifically mentioned by name. Moreover, the provision that "shares" were to be proportionately increased, rather than that the released income should be divided among the beneficiaries identified by name, indicates an intent that those receiving the income are the ones to be benefited. When, in the concluding clause of paragraph (4), the testator spoke of "the persons named in this paragraph," he referred not only to those listed by name but also to those who might be their lineal descendants. The court was correct in its answers to questions (b), (c) and (f). We add that *Swole* v. *Burnham,* 111 Conn. 120, 149 A. 229, relied on by the six appellants, is clearly distinguishable by reason of the language of the two wills.

Another issue, raised upon the appeal now under discussion, deals with the answer given by the court to question (d). The question sought an answer determining the proper distribution of the share of the income formerly enjoyed by Thomas A. Lyons. As the question indicates, Lyons is dead and has left no lineal descendants. He was the Thomas A. Lyons mentioned in the portion of paragraph (4) reciting "and one part [to be] divided equally between my nieces, Flora A. Lyons and Harriet Lyons Shumard, and my nephews, Ross C. Lyons, Robert W. Lyons and Thomas A. Lyons." By its answer the court decided that the fractional share of Thomas A. Lyons was to be divided only among the persons or the survivors of the persons with whom he would have shared "one part."

Here again, the concluding clause of paragraph (4) controls. While it might seem to be more reasonable to believe that the testator would wish those of his nieces and nephews who were to share "one part"

to enjoy that part to the exclusion of all others named in the paragraph, he has failed so to express himself. The controlling factor in the construction of all wills is the expressed intent, as that intent is disclosed by the language of the testator. *Budington* v. *Houck,* 134 Conn. 72, 76, 54 A.2d 671. We are limited to the language used. "We may construe a will but we are powerless to construct one." *Hoenig* v. *Lubetkin,* 137 Conn. 516, 524, 79 A.2d 278. The court erred as to question (d). The correct answer is "No." Question (e), which the court failed to answer, should be answered "Yes."

No assignment of error is directed to the other questions.

There is error in part, the judgment is set aside and the case is remanded with direction to render judgment as on file except that question (d) should be answered "No" and question (e) should be answered "Yes."

In this opinion the other judges concurred.