THE CONNECTICUT BANK AND TRUST COMPANY,
TRUSTEE (ESTATE OF HELEN HART) *v.*
THOMAS K. HILLS ET AL.

KING, C. J., ALCORN, HOUSE, THIM and RYAN, JS.

Argued December 10, 1968—decided January 8, 1969

*Clifford S. Burdge, Jr.,* with whom was *Sherin V. Reynolds,* for the appellant (defendant William S. Hills).

*James F. Dawson,* with whom, on the brief, was *Joseph Neiman,* for the appellee (named defendant).

*Charles W. Page,* appeared for the plaintiff but did not argue the cause.

KING, C. J. The plaintiff bank is the trustee of an irrevocable, inter vivos trust established by Helen Hart, of Hartford, on January 27, 1949. The provisions of the trust which are material to a disposition of this proceeding may be stated in simplified form as follows: The trust, the validity and interpretation of which was to be governed by the laws of Connecticut, provided that the income be paid to Lotta J. Kirkpatrick during her lifetime; that at her death the income should be paid equally to Charles I. Hills and Thomas K. Hills, who were brothers; that, at the death of either, his share of the income should continue to be paid "per stirpes, to his descendants living at the time of each regular

income payment . . . during the period of the Trust and, if all descendants of such deceased cousin should die during such period the Trustee shall pay over the entire net income from this Trust to the survivor of said two cousins during his life". The father of Charles and Thomas Hills was the brother of Miss Hart's mother, and thus Charles and Thomas were Miss Hart's cousins.

Lotta J. Kirkpatrick died on May 26, 1962, and thereafter the income was paid to Charles and Thomas Hills until January 26, 1966, when Charles Hills died.

Charles Hills had no children of his own, but his wife had a son, William, born May 22, 1922, of a prior marriage, whom Charles adopted on March 19, 1936, and who thereafter had the name of William S. Hills and continued to live with his mother and adoptive father until his own marriage in 1944.

The basic question in this proceeding is whether William S. Hills is entitled to receive his adoptive father's share of the income of the trust and this question in turn depends on whether, as an adopted son, he is embraced in the term "descendants" of Charles Hills as used in the trust.

The present action was instituted by the trustee seeking advice as to the proper interpretation of the trust with respect to William's rights, if any, under it. Answers were sought to three stated questions. Thomas Hills and William Hills were made parties defendant. William admitted the material allegations of the complaint. Thomas admitted several of the material allegations of the complaint and pleaded insufficient knowledge as to others. Each defendant made claims as to the proper answers which should be given to the questions reserved.

Interrogatories propounded by William to Thomas

Hills were answered, as were interrogatories propounded by Thomas to William, and a deposition was taken of Ella D. Hills, William's mother and the widow of Charles. The parties stipulated that the interrogatories and the deposition, together with the admissions in the pleadings and the trust instrument itself, constituted all of the relevant evidence, that the answers to the interrogatories should be deemed the equivalent of direct testimony with the right of cross-examination waived, and that the deposition of Mrs. Hills should be deemed equivalent to her testimony as if it had been given in court.

The words "descendant" or "issue" in their ordinary and primary meaning connote lineal relationship by blood, and they will be so construed unless it clearly appears that they were used in a more extended sense.[1] *Bridgeport-City Trust Co.* v. *Buchtenkirk,* 143 Conn. 531, 535, 124 A.2d 231; *Bankers Trust Co.* v. *Pearson,* 140 Conn. 332, 356, 99 A.2d 224; *Trowbridge* v. *Trowbridge,* 127 Conn. 469, 472, 17 A.2d 517; *Wildman's Appeal,* 111 Conn. 683, 687, 151 A. 265. The court concluded that it did not clearly appear that Miss Hart used the word "descendants" with other than its primary meaning, and, so, it refused to find that William was embraced in the term "descendants" and answered the questions accordingly. From that decision William took this appeal.

William claims that under our cases words such as "descendant" or "issue" include an adopted child where (1) the adoption occurred prior to the execu-

---

[1] General Statutes § 45-65a, first enacted in 1959 and applicable to wills and trust instruments executed subsequent to October 1, 1959, reverses this common-law presumption, but of course it is inapplicable to the trust involved in the present appeal.

tion of the instrument to be construed, (2) the testator or settlor regarded the adopted person as the son or daughter of the adoptive parent, and (3) the testator or settlor never expressed opposition to the adoption.

Our cases do not support any such mechanical rule of construction. In *Ansonia National Bank* v. *Kunkel,* 105 Conn. 744, 748, 136 A. 588, the testator "knew and approved of the adoption", yet the decision that an adopted child was included in the word "issue" was based on many special circumstances beyond the mere fact of approval of the adoption. Id., 748–55. Moreover, precedents in the construction of wills or trusts are seldom of persuasive force, since the surrounding circumstances in each case, as well as the precise words employed, usually differ significantly. *Connecticut Bank & Trust Co.* v. *Lyman,* 148 Conn. 273, 281, 170 A.2d 130, and cases cited.

Second, the quest in each case is the expressed intent of the testator or settlor in the light of the circumstances surrounding him at the time the instrument was executed. This is more fully set forth in cases such as *Connecticut Bank & Trust Co.* v. *Lyman,* supra, 278, and cases cited. As to evidence admissible in the determination of that intent, see *Trowbridge* v. *Trowbridge,* supra, 474, and *Perkins* v. *Corkey,* 147 Conn. 248, 252, 159 A.2d 166.

Miss Hart was an educated woman, and there was much justification for the conclusion of the court that, had she intended to include William, she would not have chosen, in expressing such an intention, an inapt word primarily signifying lineal blood relationship. William claims, on a number of grounds, that the language of the trust instrument, read in the light of all of the circumstances surrounding

Miss Hart at the time of execution, clearly demonstrates an intention that the word "descendants" should include him as an adopted child of Charles. *Bridgeport-City Trust Co.* v. *Buchtenkirk,* 143 Conn. 531, 535, 124 A.2d 231.

It is true, as William claims, that the fact that the adoption took place about thirteen years prior to the execution of the trust is an important factor. This is because it is seldom that any clear expression of an intention to include an adopted child in the use of a word such as "descendant" can be found if the adoption took place subsequent to the execution of the instrument and if the settlor, when the instrument was executed, did not know that any adoption was even contemplated. *Bankers Trust Co.* v. *Pearson,* 140 Conn. 332, 356, 99 A.2d 224; *Mooney* v. *Tolles,* 111 Conn. 1, 10, 149 A. 515. But the converse of William's claim does not follow. Thus, neither the fact that the adoption preceded the execution of the trust instrument nor the fact that, as the court found from circumstantial evidence, Miss Hart probably knew of the adoption when she established the trust would, even together, suffice to require the court to conclude that, in using the term "descendants" of Charles, she intended to include his adopted son William.

William makes much of the fact that there is nothing to indicate that Miss Hart disapproved of his adoption and that this added element is sufficient to prove that she intended to include him. This argument has little weight. It would have been rather bad manners and rather bad taste if Miss Hart had taken it upon herself to express to William, to his parents, or to anyone else, her disapproval of the adoption. This is especially so because it does not appear that she knew of the adoption until it had

taken place and because William was the son of Charles' own wife by a previous marriage. Whatever might have been the case had Miss Hart expressed disapproval of the adoption, we attach no controlling significance to her failure so to do. See *Bridgeport-City Trust Co.* v. *Buchtenkirk,* supra, 536. Certainly a failure to express disapproval is not, as William seems to claim, the equivalent of approval. Apparently, Miss Hart treated and referred to William, after the adoption, as Charles' son, which was the conduct to be expected of a well-mannered woman, especially under the circumstances. Indeed, the fact that she had probably known of the adoption for a number of years before she established the trust would indicate, if anything, that her failure to employ language apt to include an adoptive child was not an inadvertence but was deliberate.

William claims that, since Thomas and Charles were in their late forties when the trust was executed and since neither had had natural children, it is necessary to conclude that the word "descendants" included an adopted child since there was no natural child to which the term "descendants" could apply. This is a circumstance to be considered, but many men of fifty or over become fathers, and we do not find this claim of William of controlling weight. It must also be remembered that the inter vivos trust was irrevocable and could not have been subsequently altered by Miss Hart, even had she so desired, to the prejudice of nonconsenting beneficiaries.

William also claims that there is a presumption against the disinheritance of heirs at law and that, under our adoption statute (General Statutes § 45-65), William was given the rights of inheritance

of a natural child and, so, became an heir at law of his adoptive father. *Ansonia National Bank* v. *Kunkel,* 105 Conn. 744, 753, 136 A. 588. Whether this in turn would make him an heir at law of Miss Hart does not appear. She may have had relatives closer than Thomas or Charles. But even if we could say that William was one of her heirs at law, while it would be a fact to be considered, it still would not be a fact of controlling force. Indeed, if it were to be given controlling force, it would always lead to a result contrary to our basic rule that the primary meaning of words used is to control unless a clear intent to the contrary appears. This is but one of the "somewhat contradictory" presumptions referred to in *Trowbridge* v. *Trowbridge,* 127 Conn. 469, 473, 17 A.2d 517. Obviously, under a broad type of adoption statute such as ours, the use of the word "child" or "children" as intentionally inclusive of an adopted child is not unlikely. If the testator or settlor is the adopting parent, the term "child" or "children" is ordinarily held inclusive of an adopted child. But the same cannot be said of the term "descendants", which was the term used here, since that word, much more than the word "child" or "children", distinctly and emphatically connotes a lineal blood relationship. See *Wildman's Appeal,* 111 Conn. 683, 687, 151 A. 265.

William, as already indicated, places great reliance on the case of *Ansonia National Bank* v. *Kunkel,* supra. The case is an application of our common-law rule as to the primary meaning of words used. In the *Kunkel* case, the word "issue" was held to include an adopted child, but there were numerous special facts on which the court relied which are set forth in the opinion beginning on page 748, perhaps the most significant of these facts being

that the testator had obviously used the words "children" and "issue" interchangeably in his will. Id., 752. In the quoted portion of the instant trust, the word "descendants" was used throughout, and there is nothing to suggest that it was used as a synonym of "children".

A summary of our cases regarding the intention to include an adopted child in the use of words such as "child", "issue", "lineal descendant" and the like is given in the *Trowbridge* case. Since then, we have held in *Morgan* v. *Keefe,* 135 Conn. 254, 256, 63 A.2d 148, that the word "children" did not include a child adopted, subsequent to the testatrix' death, by her nephew; in *Bankers Trust Co.* v. *Pearson,* 140 Conn. 332, 356, 99 A.2d 224, that a child adopted long after the testator's death was not included in the term "issue"; and in *Bridgeport-City Trust Co.* v. *Buchtenkirk,* 143 Conn. 531, 537, 124 A.2d 231, that an adopted child was not included in the words "lineal descendants", although in the latter case there was evidence that the testator refused to alter his will to make it clear that the adopted child was embraced in the words used.

The trial court concluded that there was nothing clearly to indicate that Miss Hart used the word "descendants" in other than its primary sense and that when so used it would not include William. We find no justification for disturbing either conclusion. *Bridgeport-City Trust Co.* v. *Buchtenkirk,* supra, 535.

There is no error.

In this opinion the other judges concurred.