MARY B. PARKER *v.* THOMAS J. MULLEN ET AL.,
TRUSTEES (ESTATE OF CHARLES W. DEYO)

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued February 7—decided February 26, 1969

1

2

*James F. Bingham,* for the appellant (plaintiff).

*Bruce B. O'Dea,* with whom was *John J. Kennedy,* for the appellee (defendant Shirley E. McAlester).

KING, C. J.   Charles W. Deyo died a resident of New Canaan on December 18, 1952, leaving a will dated June 10, 1948.   His wife had died March 5, 1948, and her death apparently precipitated the formulation of a revised estate plan.

Although the record contains no indication that the testator had any children, it does appear that he had certain preferences among members of his family and that he decided, upon consultation with his personal attorney, who was the draftsman of his will, that these preferences should be achieved through gifts of insurance rather than through inequalities in testamentary dispositions.

Accordingly, six separate trusts were established under the will.   The corpus of each was of equal value, and the income of each was to be paid, for life, to a designated beneficiary.   Upon the death of its life beneficiary, a given trust was to terminate, and the remainder was to pass in equal shares to all of the then living children of certain designated brothers, sisters, brothers-in-law and sisters-in-law of the testator, including Mrs. Rachel Fitch, a sister of the testator.

Belle Kittell, a sister-in-law of the testator and the life income beneficiary of one of the six trusts, hereinafter for convenience referred to as the Kittell trust, died on August 27, 1960, and the Probate Court for the district of New Canaan entered an order and decree approving the trustees' final account in the Kittell trust, ascertaining the distributees of the remainder, and ordering distribution. From that order and decree Mary B. Parker, the plaintiff, took an appeal to the Superior Court. The basic ground of appeal was that the Probate Court was in error in including Shirley E. McAlester as one of the twenty-seven ascertained distributees of the remainder of the Kittell trust.

Jesse Deyo, the testator's brother and the life income beneficiary of another of the six trusts, hereinafter for convenience referred to as the Deyo trust, died on July 26, 1962, and the Probate Court made an order, similar to that made with respect to the Kittell trust, which also included Shirley E. McAlester among the twenty-seven ascertained distributees of the remainder of the Deyo trust. From this order and decree also, the plaintiff here took an appeal on the same ground.

The Superior Court rendered judgment affirming the probate decree in the case of each trust, and from this judgment appeals were taken. The parties stipulated that the issues in the two appeals were the same, that the appeal in the Deyo trust need not be further prosecuted, that the judgment of this court in the appeal involving the Kittell trust should be dispositive of the appeal involving the Deyo trust, and that judgment should be rendered in the Superior Court in the appeal in the Deyo trust in conformity with the decision of this court in the appeal in the Kittell trust.

The parties, in oral argument, abandoned any claim for changes in the subordinate facts found and agreed that the sole basic issue in this appeal is whether the subordinate facts of the finding support and warrant the court's conclusion that Shirley E. McAlester should be included among the ascertained distributees of the remainder of the Kittell trust.

The testator, in a discussion with his attorney concerning the drafting of the will, expressed a strong desire that Eleanor Mary Kittell (now Mrs. Higgott), who was the adopted daughter of William and Eleanor Kittell and the only adopted niece the testator then had, should be included among the remaindermen and was advised by his attorney that, if the word "issue" was used in describing the remaindermen of a trust, it would not include an adopted niece but that, if the word "children" was used, it would include a niece by adoption. Consequently the word "children" was used in describing the remaindermen. Although the attorney's advice was not entirely accurate under Connecticut law, it does aid in determining the testator's intent in his use of the word "children". See cases such as *Connecticut Bank & Trust Co. v. Hills,* 157 Conn. 375, 379, 254 A.2d 453.

Shirley E. McAlester was the granddaughter of the testator's sister, Rachel Fitch, who took her into her home when Shirley was less than one month old, since Shirley's own mother (Mrs. Fitch's daughter) was unable to care for her. She was brought up with, and on the same basis as, Mrs. Fitch's own children until she married on December 20, 1949, a few days after Mr. and Mrs. Fitch had adopted her. Her adoption had been discussed since her childhood, but economic factors interfered.

Indeed, Shirley used some of her own earnings to help pay for her adoption since she wanted to be married under the name of Fitch.

The adoption took place, as already noted, about eighteen months after the testator made his will. As early as the summer of 1949, he knew the adoption was contemplated and approved of the idea. In 1950, he was informed that the adoption had been completed and again expressed approval. Although he was at all times in good health, mentally and physically, up until the inception of his final illness in the summer of 1951, he died without having made any changes in the 1948 will. This is one of the facts differentiating this case from *Connecticut Bank & Trust Co.* v. *Hills,* supra, 381, which involved an irrevocable inter vivos trust.

It is true, as the plaintiff points out, that the word "children", in its primary meaning, connotes blood relationship and, except when the testator or settlor is the adopting parent, will not be construed as embracing an adopted child unless a clear intent appears that the word be given a more extended meaning.[1] *Connecticut Bank & Trust Co.* v. *Hills,* supra, 378, 382.

Here, however, it is clear that the testator deliberately chose the word "children" upon the advice of his attorney for the express purpose of including the only niece by adoption whom he had at the time he executed his will. There is no hint that he could possibly have understood, or had any reason to understand, his attorney's instructions to be limited to children who had already been adopted. When he heard of Shirley's adoption, he must have realized

---

[1] Since the will in this case was executed prior to October 1, 1959, General Statutes § 45-65a is inapplicable, and the common-law presumption as to the primary meaning of the word "children" controls.

that it would operate to raise her relationship to the Fitches from that of a natural grandchild to that of an adopted child, and that the word "children", in the sense in which he had used it, would then include her, as an adopted child of the Fitches, among the remaindermen of the trust. He had ample opportunity to change his will but did not do so.

The plaintiff is forced to, and does, claim that, while the word "children" admittedly includes Mrs. Kittell's adopted daughter, it does not include Shirley although she was Mrs. Fitch's adopted daughter. The plaintiff attempts to justify, on two main grounds, this claimed distinction in application of the same word, "children". She claims that the will shows an intent to have an equality among the children of the designated relatives. This appears to be true. From this, the plaintiff claims that this equality is destroyed if Shirley is included among the remaindermen, since before her adoption she was a grandchild of Mrs. Fitch and, as such, would not have been included among the remaindermen of the trust. The plaintiff overlooks the fact that, by virtue of the adoption, Shirley became an adopted child of Mrs. Fitch, who was a designated relative, and that Shirley thus came within the meaning of the word "children" as the testator's attorney had explained it to the testator and as he had used it in the will. Indeed, it is extremely unlikely that the testator would have used the same word in the same connection with two such widely different meanings. We find no merit in this claim of the plaintiff.

The plaintiff's second claim seems to be that the testator intended that only children adopted prior to the execution of the will should be included among the remaindermen. The short answer is that nothing in the will supports that claim. Moreover, the claim

is contrary to the rule of *Gold* v. *Judson,* 21 Conn. 616, 623, that a will ordinarily speaks as of the date of the death of the testator. Furthermore, the "children" referred to are described as those "then living" at the death of the life income beneficiary of the particular trust. Shirley was alive at Belle Kittell's death and thus was included under the language of the will.

As it was pointed out in *Connecticut Bank & Trust Co.* v. *Hills,* supra, 382, under a broad type of adoption statute such as that of Connecticut, the word "children" is more likely to be used to express an intent to include adopted children than is a word which distinctly and emphatically connotes lineal blood relationship, such as "issue" or "descendants". But "the quest in each case is the expressed intent of the testator or settlor in the light of the circumstances surrounding him at the time the instrument was executed." Id., 379.

The court concluded that the testator intended, in the use of the word "children", to include among the remaindermen not only the adopted daughter of Mr. and Mrs. William F. Kittell, whose inclusion the testator expressly discussed with his attorney, but also the daughter adopted by Mr. and Mrs. Fitch after the execution of the will although long before the death of the testator. On the subordinate facts, this conclusion was fully warranted and, in turn, required the court's action in dismissing the appeal from probate and approving the order and decree of the Probate Court.

There is no error.

In this opinion the other judges concurred.