The Connecticut Bank and Trust Company, Trustee (Estate of Robert L. Walker) *v.* Evelyn W. W. Bovey et al.

House, C. J., Thim, Ryan, Shapiro and Loiselle, Js.

Argued December 8, 1971—decided January 19, 1972

*John J. McGrath,* with whom was *John E. Silliman,* for the appellant (defendant Lake).

*Charles W. Page,* guardian ad litem, for the appellees (all other defendants).

*Robert C. McNally,* for the plaintiff.

SHAPIRO, J. This is an action brought by the plaintiff, as trustee, under a trust agreement dated July 1, 1930, for instructions by the Superior Court regarding the proper distribution of an undivided one-fourth interest in the trust corpus and the income accruing thereon. From the judgment rendered answering eight questions submitted to the court for the purpose of determining the construction and effect regarding a portion of the trust agreement, an

appeal was taken to this court.[1] Our consideration, however, of questions A, E, F and G and the answers thereto are dispositive of the appeal.

The finding, which is not subject to correction, recites the following facts: This action for the construction of an irrevocable and unamendable inter-vivos trust agreement, expressly providing that it shall be governed by Connecticut law, seeks a determination as to whether, as used in the trust agreement, the words "child" or "children" include an adopted child. The trust agreement was created on July 1, 1930, by its settlor, Robert Leslie Walker, a resident of Hobart, Tasmania, and it provided that the net income was to be paid for life to Robert's brother Cecil and the latter's wife Madge if she survived her husband.[2] The agreement also provided

---

[1] The questions and answers were as follows:

A. Does the word "child" as used in said Article Second, Paragraph (d) include Robin Lake, the adopted son of Elinor Wayne Thurgood? Answer: No.

B. Is the income from Elinor Wayne Thurgood's share of the Trust to augment the shares of the surviving daughters of Cecil Walker? Answer: Yes.

C. Is income from said share to be paid to the surviving daughters of Cecil Walker? Answer: Yes.

D. Is income from said share to be added to the corpus of the shares of the surviving daughters of Cecil Walker? Answer: No.

E. Does the word "child" as used in said Article Third, Paragraph (a) include Robin Lake? Answer: No.

F. Is an equal one-fourth part of the corpus of the Trust Estate with all accumulations thereto to be paid to Robin Lake free of any trust? Answer: No.

G. Does the word "child" as used in Article Third, Paragraph (c) include Robin Lake? Answer: No.

H. Is Elinor Wayne Thurgood's one-fourth share of the corpus of the Trust Estate to augment the shares of the surviving daughters of Cecil Walker? Answer: Yes.

[2] We point out that at the trial of this case, the defendant Robin Lake contended that the settlor of the trust was Cecil Walker rather than Robert Leslie Walker. For purposes of this appeal, however, Robin Lake concedes that Robert Leslie Walker was the settlor of this trust.

that on the death of the survivor, the income was to be divided equally among Cecil's four daughters for the duration of their lives and, on the death of any one of the four "without leaving a child or children or issue her surviving," her share of the income "shall thereafter go to augment the shares of the survivors or survivor of said four daughters for and during their lives respectively." The agreement provided alternatively that on the death of any of the four daughters, one-fourth of the trust corpus shall be paid over free of trust to "the child or children and to the issue of any deceased child" surviving the deceased daughter. The agreement also provided that if such deceased daughter left no "child or children, or the issue of any deceased child, her surviving," said one-fourth share of the trust corpus "shall go to augment the share of the survivors or survivor of said four daughters for payment of income to them during life . . . and for purposes of distribution of corpus to their issue at death as herein provided."

On January 20, 1950, Cecil Walker died, his wife having predeceased him, and he left as his only heirs-at-law his four daughters. One of the daughters, Elinor Thurgood, died on March 9, 1966, leaving an adopted son, Robin Lake, but leaving no children born to her. Robin was born on March 18, 1939, and was adopted by Elinor Thurgood and her husband on November 5, 1941, more than ten years after the execution of the trust agreement. Robert Leslie Walker, the named settlor of the trust created by the agreement of July 1, 1930, died a bachelor on July 1, 1940, leaving, as his only heir-at-law his brother Cecil. Following Cecil's death, the plaintiff paid the trust income in equal shares to his four daughters until Elinor Thurgood's death on March 9, 1966.

Since her death, the plaintiff has accumulated into a segregated fund Elinor Thurgood's former one-fourth interest in the income, pending a judicial determination of the rights of those entitled to it. The trust agreement of July 1, 1930, is both irrevocable and unamendable and contains no evidence on its face as to the intent of the settlor relative to the inclusion or exclusion of an adopted child within the term used therein of "child or children." Robert Leslie Walker had no thought or question of anyone adopting a child. He was a bachelor and was against taking any unnecessary responsibilities and would certainly have been against adoption.

On the foregoing facts, the court concluded that Robert Leslie Walker was the actual settlor of this trust and his assets were used to fund the trust; that where no intention to include adopted children to share in the benefits therefrom appears from the language of a pre-October 1, 1959, instrument and the surrounding circumstances, such children will be presumed to be excluded within the meaning of such words as "child," "children," "issue" and "descendants"; that Robin Lake is not entitled to his deceased mother's (Mrs. Thurgood's) one-fourth interest in the corpus of the trust created by the agreement of July 1, 1930; and that the questions propounded as appear in paragraph 8 of the complaint should be answered as recited in the judgment.[3]

The defendant Robin Lake assigns error in the conclusions reached by the trial court. They are tested by the finding. *Brauer* v. *Freccia,* 159 Conn. 289, 293, 268 A.2d 645; *Brockett* v. *Jensen,* 154 Conn. 328, 331, 225 A.2d 190. The conclusions reached by the court must stand unless they are legally or

---

[3] See footnote 1 for the questions propounded and the answers thereto.

logically inconsistent with the facts found or unless they involve the application of some erroneous rule of law material to the case. *Brauer* v. *Freccia,* supra; *Johnston Jewels, Ltd.* v. *Leonard,* 156 Conn. 75, 79, 239 A.2d 500.

The position taken by Robin Lake, stated simply, is that no intention appears from the provisions of the trust agreement dated July 1, 1930, nor from the circumstances surrounding its execution that the settlor had, at that time, any intent to either include or exclude an adopted child within the class gift to "child or children"; that through Mrs. Thurgood, his adoptive mother, he is an heir-at-law of the settlor, Robert Leslie Walker; that under our statutes of adoption and distribution he is the "child" of Mrs. Thurgood; and that he should not be disinherited because he is an adopted child rather than a child born to Mrs. Thurgood.

The term "child" or "children," when used in a trust instrument or a will, may include an adopted as well as a natural child if an intent to include the adopted child definitely appears from a reading of the instrument in light of the circumstances surrounding the settlor at the time of execution. *Morgan* v. *Keefe,* 135 Conn. 254, 257, 63 A.2d 148; *Middletown Trust Co.* v. *Gaffey,* 96 Conn. 61, 67, 112 A. 689. Otherwise, these terms will be presumed to have been used in their ordinary and primary meaning. *Connecticut Bank & Trust Co.* v. *Hills,* 157 Conn. 375, 378, 382, 254 A.2d 453; *Bankers Trust Co.* v. *Pearson,* 140 Conn. 332, 356, 99 A.2d 224; *Bridgeport-City Trust Co.* v. *Buchtenkirk,* 143 Conn. 531, 538, 124 A.2d 231; *Ansonia National Bank* v. *Kunkel,* 105 Conn. 744, 750–51, 136 A. 588; *Middletown Trust Co.* v. *Gaffey,* supra, 71. In *Parker* v. *Mullen,* 158 Conn. 1, 5, 255 A.2d 851, we held that the word "chil-

dren," in its primary meaning, connotes blood relationship and except where the testator or settlor is the adopting parent, will not be construed as embracing an adopted child unless a clear intent appears that the word be given a more extended meaning. Where no intent to include the adopted child can be ascertained, the common law favors ancestral blood and will presume that the settlor did not intend that a stranger to his blood take. *Middletown Trust Co.* v. *Gaffey,* supra; *Ansonia National Bank* v. *Kunkel,* supra. This presumption is merely an aid to construction, of course, where the intent of the settlor is otherwise undisclosed. *Trowbridge* v. *Trowbridge,* 127 Conn. 469, 474, 17 A.2d 517.

Seldom can any clear expression of an intention to include an adopted child be found where, as here, an adoption takes place subsequent to the execution of the trust instrument and the settlor did not know that any adoption was even contemplated when the instrument was executed. *Connecticut Bank & Trust Co.* v. *Hills,* supra, 380; *Bankers Trust Co.* v. *Pearson,* supra; *Mooney* v. *Tolles,* 111 Conn. 1, 10, 149 A. 515. Robin Lake concedes that nothing appears from the face of the trust instrument or from circumstances surrounding its execution to suggest that the settlor ever intended to include him. Certainly, a failure to express disapproval is not the equivalent of approval. *Connecticut Bank & Trust Co.* v. *Hills,* supra, 381.

Cases such as *Parker* v. *Mullen,* supra, *Mooney* v. *Tolles,* supra, and *Ansonia National Bank* v. *Kunkel,* supra, were all situations where a testator knew and approved of an adoption and the surrounding circumstances indicated an intention to include the adopted child within the term "child" or "children." The only finding of the trial court which pur-

ports to bear on the settlor's intent is that he "would certainly have been against adoption" had he any thought or question of anyone adopting a child when the instrument was drawn. No finding of an intent to include Robin Lake was made.

The defendant Robin Lake in his brief urges that the so-called "stranger to the adoption rule" should be abandoned and cites a number of cases from other jurisdictions which have done so, primarily based on the rationale that if a settlor had determined to exclude adopted children he would make an express and unequivocal statement regarding their exclusion. He urges this court retrospectively to apply General Statutes § 45-65a.[4] This section, first enacted in 1959 and made applicable to wills and trust instruments executed subsequent to October 1, 1959, reversed the common-law presumption but on its face, of course, is inapplicable to this trust executed in 1930.

Despite what we in 1972 may think of the legal correctness or overall desirability of this common-law presumption excluding adopted children, we observe that we are confronted here with the interpretation of a 1930 trust instrument drawn in light of our law as it then existed. Our common-law presumption was then well established, having been enunciated in *Middletown Trust Co.* v. *Gaffey*, supra, nine years earlier. The language used in a complex trust instru-

---

[4] "[General Statutes] Sec. 45-65a. WORDS 'CHILD,' 'DESCENDANT,' 'HEIRS' IN WILLS AND TRUST DOCUMENTS TO INCLUDE ADOPTED PERSONS. The words 'child,' 'children,' 'issue,' 'descendant,' 'descendants,' 'heir,' 'heirs,' 'lawful heirs,' 'grandchild' and 'grandchildren,' when used in the singular or plural in any will or trust instrument, shall, unless such document clearly indicates a contrary intention, include legally adopted persons. Nothing herein shall be construed to alter or modify the provisions of section 45-162. The provisions of this section shall apply to wills and trust instruments executed subsequent to October 1, 1959."

ment such as the one presented before us is usually selected not by the settlor but by his attorney. Although no evidence was presented as to whether the issue of adopted children was ever discussed between the settlor and his attorney in the case at bar, it is reasonable to assume and to expect that attorneys, in drawing up trust instruments, know and rely on existing law in selecting terminology for use therein. Although we, today, might think it desirable that attorneys express unequivocally a settlor's wish, we will not consider retrospectively abandoning a rule whose effect is, doubtless, incorporated into many existing irrevocable trust instruments and was relied on as controlling law up to the point of legislative change by scriveners who had considered the question of adopted children when drafting trusts and wills.

The need for orderly transition in this area must control over any claim of Robin Lake.[5] The legislature, in setting a fixed prospective date to change this common-law presumption of intent, was perhaps also proceeding along this path of reasoning. Thus, we once again must refuse to hold General Statutes § 45-65a applicable retrospectively. See *Parker* v. *Mullen,* supra, 5 n.; *Connecticut Bank & Trust Co.* v. *Hills,* supra, 378 n.

There is no error.

In this opinion the other judges concurred.

---

[5] On facts identical with those before us in this case a similar result was reached in *Central Trust Co.* v. *Bovey,* 25 Ohio St. 2d 187, 267 N.E.2d 427.