COMMUNITY RENEWAL TEAM, INC. *v.* UNITED
STATES LIABILITY INSURANCE
COMPANY ET AL.
(AC 31317)

Bishop, Beach and Borden, Js.

Argued February 14—officially released April 19, 2011

*Thomas R. Gerarde*, with whom, on the brief, was *Jeffrey E. Potter*, for the appellant (substitute plaintiff).

*Kathleen Morrison Grover*, with whom was P. Jo Anne Burgh, for the appellee (named defendant).

*Opinion*

BORDEN, J. This appeal involves a dispute between two insurance companies—the substitute plaintiff, Arrowood Indemnity Company (Arrowood), and the named defendant, United States Liability Insurance Company[1]—over the duty to defend under a liability insurance policy. The sole issue of the appeal is whether the trial court properly rendered summary judgment in favor of the defendant in relation to a liability insurance policy that it had issued to the named plaintiff, Community Renewal Team, Inc. (Community).[2] The trial court

---

[1] R.C. Knox & Company, Inc., was named as an additional defendant in this action. It is not involved in this appeal. We therefore refer in this opinion to United States Liability Insurance Company as the defendant.

[2] Earlier, there were two additional plaintiffs, namely, the city of Bristol and Tibor Flothman, a city employee. Subsequently, Arrowood was substituted as a plaintiff for the city and Flothman. Arrowood is the ultimate successor in interest to Connecticut Fire and Casualty Insurance Company, which had issued a policy of commercial general liability insurance to the city. Arrowood is the only plaintiff involved in this appeal.

ruled that the defendant had no duty to defend against a certain claim made against Community that Arrowood had paid. We affirm the judgment of the trial court.

The procedural background is as follows. Michelle Roman, an employee of Community, brought an action against the city of Bristol in connection with certain injuries she sustained on July 2, 2003, during an event sponsored by Community at a certain Pine Lake Challenge Course operated by the city. The defendant had issued a liability policy to Community for certain coverage of the event. Community notified the defendant of Roman's claim, and the defendant declined to defend or to indemnify Community. Ultimately, Arrowood, the city's liability carrier; see footnote 2 of this opinion; settled Roman's claim for $700,000.

Thereafter, Community brought this action against the defendant for breach of the defendant's obligations under its policy. Arrowood entered the action as a substitute plaintiff; see footnote 2 of this opinion; and filed an amended complaint against the defendant on a theory of equitable subrogation because it had paid the claim to Roman that, it alleged, the defendant should have paid. Arrowood filed a motion for summary judgment, claiming that the defendant had breached its duty to defend the Roman lawsuit. The defendant filed a cross motion for summary judgment, claiming that it had no duty to defend that lawsuit. The court granted the defendant's motion and denied Arrowood's motion, and rendered judgment in favor of the defendant. This appeal followed.

The dispute between the parties revolves solely around an exclusion in the defendant's policy for participation in athletic activity. Specifically, the exclusion, titled "Exclusion—Athletic Activity or Sports Participants," provides: "This insurance does not apply to 'bodily injury' to any person practicing, instructing *or*

*participating in any* physical training, sport, *athletic activity* or contest whether on a formal or informal basis." (Emphasis added.)

Arrowood claims that the trial court improperly concluded that the defendant had no duty to defend against Roman's lawsuit because the language of the exclusion is ambiguous and there was, therefore, a possibility of coverage. We disagree.

The parties agree, as do we, that our scope of review on the trial court's ruling on their cross motions for summary judgment is plenary. See *Clinch* v. *Generali-U.S. Branch*, 110 Conn. App. 29, 34, 954 A.2d 223 (2008), aff'd, 293 Conn. 774, 980 A.2d 313 (2009).

Furthermore, the law on an insurer's duty to defend is well settled. "[A]n insurer's duty to defend, being much broader in scope and application than its duty to indemnify, is determined by reference to the allegations contained in the [underlying] complaint. . . . The obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage. If the latter situation prevails, the policy requires the insurer to defend, irrespective of the insured's ultimate liability. . . . It necessarily follows that the insurer's duty to defend is measured by the allegations of the complaint. . . . Hence, if the complaint sets forth a cause of action within the coverage of the policy, the insurer must defend. . . . Indeed, [i]f an allegation of the complaint falls even possibly within the coverage, then the insurance company must defend the insured. . . . On the other hand, if the complaint alleges a liability which the policy does not cover, the insurer is not required to defend. . . . *Community Action for Greater Middlesex County, Inc.* v. *American Alliance Ins. Co.*, 254 Conn. 387, 398–99, 757 A.2d 1074

(2000). Our Supreme Court has concluded consistently that the duty to defend means that the insurer will defend the suit, if the injured party states a claim, which, qua claim, is for an injury covered by the policy; it is the claim which determines the insurer's duty to defend . . . . *Hartford Casualty Ins. Co.* v. *Litchfield Mutual Fire Ins. Co.*, 274 Conn. 457, 464, 876 A.2d 1139 (2005).

"In ascertaining the meaning of the terms of the insured's policy, we also are guided by well established principles. The [i]nterpretation of an insurance policy, like the interpretation of other written contracts, involves a determination of the intent of the parties as expressed by the language of the policy. . . . The determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . It is axiomatic that a contract of insurance must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy. . . . The policy words must be accorded their natural and ordinary meaning . . . [and] any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy. . . . A necessary predicate to this rule of construction, however, is a determination that the terms of the insurance policy are indeed ambiguous. . . . The fact that the parties advocate different meanings of the [insurance policy] does not necessitate a conclusion that the language is ambiguous. . . . Moreover, [t]he provisions of the policy issued by the defendant cannot be construed in a vacuum. . . . They should be construed from the perspective of a reasonable layperson in the position of the purchaser of the policy. . . . *Community Action for Greater Middlesex County, Inc.* v. *American Alliance Ins. Co.*, supra, 254 Conn. 399–

400." (Internal quotation marks omitted.) *Clinch* v. *Generali-U.S. Branch,* supra, 110 Conn. App. 34–35.

We therefore turn to an examination of the allegations of Roman's underlying complaint in her lawsuit against the city of Bristol and compare those allegations to the exclusionary language of the defendant's policy. That examination and comparison lead us to conclude that the exclusion unambiguously applies to Roman's allegations and that, therefore, the defendant had no duty to defend against those allegations.

Roman's pertinent allegations were as follows. The city, through Bristol Youth Services, operated and controlled what was known as the Pine Lake Challenge Course (challenge course). Roman was an invitee of the city "and as such was lawfully on the premises of said [challenge course] and a participant in its activities. On or about July 2, 2003, at approximately 2:00 p.m., [Roman] was participating in the last element of the day in which she was to ascend to an elevated platform and perform a free fall with a rope. At said date, time and place, [Roman] commenced the free fall when suddenly and without warning, an unknown . . . employee [of the city], who was to catch the rope and brake the free fall, failed to do so and [Roman] fell to the ground, thus causing severe and substantial injuries hereinafter complained of."

The language of the exclusion, as previously indicated, specifically excludes from coverage " 'bodily injury' to any person . . . participating in any . . . athletic activity . . . whether on a formal or informal basis." Roman's allegations clearly and unambiguously present a picture of a participant in a "challenge course" who, as a participant in the last element of the course, in early afternoon, ascends onto an elevated platform to perform a free fall with a rope, a free fall that someone

else was supposed to "brake" by catching the rope. She commences that free fall, and she is injured.

We agree with the trial court that, from any reasonable perspective, what Roman was doing was participating in an athletic activity. Put another way, as the trial court did, "there is no reasonable way to read the claims in . . . Roman's complaint other than that she was a participant in an athletic activity." Put yet another way, there is no possibility that Roman's conduct could *not* be within the meaning of "athletic activity" as that phrase is used in the policy exclusion. Simply put, common sense demands such a conclusion, and "[i]t is an abiding principle of jurisprudence that common sense does not take flight when one enters a courtroom." (Internal quotation marks omitted.) *Gazo* v. *Stamford*, 255 Conn. 245, 266, 765 A.2d 505 (2001).

Arrowood contends for ambiguity by pointing to and cobbling together various dictionary definitions of the words "athlete" and "athletic" that could, in other contexts, suggest some plausible meaning that might not include what Roman was doing, and by suggesting hypothetical scenarios—unlike that in which Roman was participating—that, similarly, might suggest other plausible meanings of the words involved. Suffice it to say that these efforts are unavailing.

As Justice Thurgood Marshall so aptly put it: "Condemned to the use of words, we can never expect mathematical certainty from our language." *Grayned* v. *Rockford*, 408 U.S. 104, 110, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972). Thus, any word in the English language—except for words of specialized contexts, such as mathematics or science—will ordinarily have multiple meanings, depending on the context in which it has been used. See *State* v. *Courchesne*, 262 Conn. 537, 564 n.23, 816 A.2d 562 (2003). That is why we have dictionaries: not to determine *the* meaning of a given word, or even

*the preferred* meaning of a given word, but simply to give us a lexicon of the various meanings that the word has carried depending on the various contexts of its use. See *Northrop* v. *Allstate Ins. Co.*, 247 Conn. 242, 250, 720 A.2d 879 (1998) ("Although we have on occasion looked to dictionaries in order to give meaning to words used in a legal context . . . that does not mean . . . that a dictionary gives *the* definition of any word. A dictionary is nothing more than a compendium of the various meanings and senses in which words have been and are used in our language. A dictionary does not define the words listed in it in the sense of stating what the words mean universally. Rather, it sets out the range of meanings that may apply to those words as they are used in the English language, depending on the varying contexts of those uses." [Emphasis in original.])

Indeed, reference to Webster's Third New International Dictionary for "athletic" gives us at least four different definitions, ranging from the somewhat unhelpful "of or relating to athletes or athletics," as in "the college athletic association," to "strong, muscular, robust, vigorous, agile, active," as in "an athletic build" or "a powerful and athletic mind." But that does not mean, as the defendant's arguments suggest, that simply because a given word or phrase used in an insurance policy has carried different meanings in different contexts in the English language, it is ambiguous and must be construed against the insurance carrier. If that were so, then for all practical purposes all such words and phrases would be ambiguous, because we would always be able to point to some other meaning that the word has carried in some other context.

Instead, the meaning of a given word or phrase—in this case, "athletic activity"—can only be determined by reference to the factual context in which it is used or to which it is to be applied. The factual context of this case is, as previously described, Roman participating in

an element of a "challenge course" by ascending to an elevated platform to perform a free fall with a rope, which is to be interrupted by a person who is to catch the rope, and then commencing that free fall. Whatever else "athletic activity" may mean in the English language in other contexts, in this context it plainly and unambiguously includes that conduct.

The judgment is affirmed.

In this opinion the other judges concurred.