******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# JOAN BUZZARD *v.* LAURA FASS ET AL.
## (AC 46257)

Elgo, Clark and Lavine, Js.

*Syllabus*

Pursuant to statute (§ 45a-731), "[a] final decree of adoption . . . shall have the following effect in this state . . . (4) The adopted person shall, except as hereinafter provided, be treated as if such adopted person were the biological child of the adoptive parent for purposes of the applicability of all documents and instruments, whether executed before or after the adoption decree is issued, which do not expressly exclude an adopted person in their operation or effect."

Pursuant further to statute (§ 45a-731 (11), "[t]he provisions of subdivisions (1) to (9), inclusive, of this section shall apply to the estate or wills of persons dying prior to October 1, 1959, and to inter vivos instruments executed prior to said date and which on said date were not subject to the grantor's power to revoke or amend, unless (A) a contrary intention of the testator or grantor is demonstrated by clear and convincing evidence, or (B) distribution of the estate or under the will or under the inter vivos instrument has been or will be made pursuant to court order entered prior to October 1, 1991."

The plaintiff appealed to the Superior Court from an order of the Probate Court overruling her objection to the approval of a periodic accounting of a testamentary trust, which had provided for distributions to the defendants, F and W, the adopted great grandnieces of the testator, T. In 1946, T executed a will and two codicils. T's will established a testamentary trust for the benefit of the descendants of his siblings. T's sister and the living issue of T's other siblings were designated as the original beneficiaries. T died in 1947, and, in 1949, the Probate Court issued a decree that transferred the "rest, residue and remainder" of T's estate to the trustee, so that the trustee could make distributions in accordance with the trust. W was adopted as a child in 1948 by a descendant of one of the original beneficiaries and began receiving distributions under the trust upon the death of her parent in 1997. F was adopted in 2008 as an adult by one of the descendants of the original beneficiaries and began receiving distributions under the trust in 2014 upon the death of her parent. In 2019, the plaintiff filed an objection in the Probate Court to the approval of a periodic accounting of the trust, arguing that the trust did not allow for distributions to F because she had been adopted as an adult. The Probate Court approved the periodic accounting, concluding that the presumption in favor of adopted persons in § 45a-731 (4) applied, and the plaintiff appealed to the Superior Court, where the defendants filed motions for summary judgment, arguing that they were included within the terms "issue" and "descendants" used in

the trust pursuant to § 45a-731 (4). The plaintiff filed a motion for summary judgment, arguing that the exceptions to § 45a-731 (4) in § 45a-731 (11) applied and, therefore, the only persons permitted to receive distributions from the trust were the originally named beneficiaries and their lineal blood descendants. The Superior Court granted the defendants' motions for summary judgment and denied the plaintiff's motion for summary judgment, rejecting the plaintiff's contention that the exceptions to § 45a-731 (4) delineated in § 45a-731 (11) applied. From the judgment rendered thereon, the plaintiff appealed to this court. *Held*:

1. The plaintiff could not prevail on her claim that the Superior Court erred in rendering summary judgment for the defendants, which was based on her claim that the exception to the presumption in favor of adopted persons set forth in § 45a-731 (11) (B) applied: the 1949 decree, which transferred the rest, residue and remainder of the estate to the trustee, did not constitute a "distribution" for purposes of § 45a-731 (11) (B) so as to require the application of the outmoded "stranger to the adoption" rule, which presumed that an adopted child was not within the intended bounty of a settlor who was not the adopting parent, because the 1949 decree did not finalize the apportionment of the remainder of the estate under the will, as distributions to those who were entitled to share in the estate under the testamentary trust were still to occur into the future, with the beneficiaries under the trust continually changing upon the birth and death of T's descendants, and the trust remained under the jurisdiction of the Probate Court; moreover, other than the plaintiff's threadbare assertion that the 1949 decree fixed the identity of the distributees under the trust, the plaintiff did not explain how that decree vested any interest in any beneficiary of the trust, rather, the record showed that the 1949 decree simply transferred to the trustee the residue of the estate so that the trustee could, in turn, make distributions to the proper beneficiaries; furthermore, although some distributions under the trust were made prior to October 1, 1991, other distributions were made and approved after that date, and, therefore, § 45a-731 (11) (B) applies only to trust distributions made or approved to be made pursuant to a court order entered prior to October 1, 1991, and does not apply to those distributions, such as the distribution challenged in this appeal, made after that date.

2. The plaintiff's claim that the exception to the presumption in favor of adopted persons set forth in § 45a-731 (11) (A) applied because there was clear and convincing evidence that T did not intend to include adopted persons as beneficiaries under the trust was unavailing: there was no rule of law at the time T's will was executed in 1946 excluding adopted persons from the definition of "issue" or "descendants," rather, under the common law, there existed a mere presumption against including an adopted person within those terms when a testator's intent was unclear, and, although the presumption in effect when T executed his

will led some courts to interpret terms like the term "issue" to exclude adopted persons, that presumption no longer applies because, in 1991, the legislature altered that presumption, and, as a result, this court presumes that the terms "issue" and "descendants" include legally adopted persons when interpreting instruments that control distributions made in accordance with a will or an estate of a person that died prior to October 1, 1959; moreover, the plaintiff's argument that T's use of the terms "issue" and "descendants" constituted clear and convincing evidence of an intent to exclude adopted persons because the old common-law presumption excluded them conflated T's actual intent with a rule of construction, and, although the terms "issue" and "descendants" may have been presumed to exclude adopted persons at the time the will was executed, the use of these terms in a will or trust, in the absence of evidence that a testator actually considered the contingency of adoption, does not provide the requisite clear and convincing evidence of T's intention that adopted persons be treated differently from biological children; furthermore, although T executed a first codicil in which he added the word "the" into the trust document, so that the trust as amended provides that the interest of any of the original beneficiaries shall be held upon the same terms for the benefit of "*the* other beneficiaries then living and/or their issue or successors," the addition of that clarifying word did not imply anything with respect to T's intent as to adopted persons and did not constitute clear and convincing evidence of an intention to exclude them.

Argued January 9—officially released May 7, 2024

*Procedural History*

Appeal from the decree of the Probate Court for the district of Hartford approving the periodic accounting of a testamentary trust, brought to the Superior Court in the judicial district of Hartford, where the court, *Sicilian, J.*, granted the defendants' motions for summary judgment, denied the plaintiff's motion for summary judgment, and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*John F. Carberry*, with whom, on the brief, were *Kelley Galica Peck* and *M. Juliet Bonazzoli*, for the appellant (plaintiff).

*Steven L. Katz*, with whom was *Alan J. Rome*, for the appellee (named defendant).

*Patrick M. Fahey*, for the appellee (defendant Pamela Baker Weiss).

*Opinion*

CLARK, J. The dispositive issue in this appeal is whether the defendants, Laura Fass and Pamela Baker Weiss, the adopted great grandnieces of Joseph Merrow, the testator, are included within the terms "issue" and "descendants" used in a testamentary trust executed by the testator in 1946. The plaintiff, Joan Buzzard, claims that the only persons permitted to receive distributions under the subject trust are the originally named beneficiaries and their lineal blood descendants, not the adopted defendants. The plaintiff claims that the Superior Court improperly granted the defendants' motions for summary judgment and denied her motion for summary judgment because it erroneously concluded that General Statutes § 45a-731 (4),[1] which provides that the terms "issue" and "descendants" when used in a will or trust shall include legally adopted persons, applied to the trust at issue in this case. She claims that the definitions set forth in § 45a-731 (4) do not apply to the subject trust because the exceptions to their application that are set forth in § 45a-731 (11) (A) and (B)[2] apply in this case. For the reasons that

_____

[1] General Statutes § 45a-731 provides in relevant part: "A final decree of adoption, whether issued by a court of this state or a court of any other jurisdiction, shall have the following effect in this state . . . (4) The adopted person shall, except as hereinafter provided, be treated as if such adopted person were the biological child of the adoptive parent for purposes of the applicability of all documents and instruments, whether executed before or after the adoption decree is issued, which do not expressly exclude an adopted person in their operation or effect. The words 'child', 'children', 'issue', 'descendant', 'descendants', 'heir', 'heirs', 'lawful heirs', 'grandchild' and 'grandchildren', when used in any will or trust instrument shall include legally adopted persons unless such document clearly indicates a contrary intention. . . ."

[2] General Statutes § 45a-731 provides in relevant part: "(11) The provisions of subdivisions (1) to (9), inclusive, of this section shall apply to the estate or wills of persons dying prior to October 1, 1959, and to inter vivos instruments executed prior to said date and which on said date were not subject to the

follow, we disagree with the plaintiff and affirm the judgment of the Superior Court.

We begin with the relevant undisputed facts and procedural history of the case. The testator died on or about March 27, 1947. He never had children and he had no living siblings at the time of his death. The testator executed a will on March 19, 1946, and later executed two codicils, one on July 1, 1946 (first codicil), and another on September 6, 1946 (second codicil). The will established three testamentary trusts for the benefit of the descendants of his siblings: the Article Fifth Trust, the Article Sixth Trust, and the Article Eighth Trust. The Article Eighth Trust (trust) is the subject of the present dispute.

The trust provides for a contingent, outright distribution of a portion of the interests in the trust proceeds to the testator's nephew, John Merrow Washburn, but it otherwise designated the testator's sister, Mary W. Merrow, who had no children, and the living issue of the testator's other two siblings, George W. Merrow and Martha Belden Washburn, as original beneficiaries.[3] Relevant for present purposes, the testator's brother, George W. Merrow, had nine children, four of whom, John Merrow, Oliver Wolcott Merrow, Pauline M. Baker, and Harriet M. Landon, also had children. John Merrow had three biological children, all of whom had biological children, and Oliver Wolcott Merrow had three children, all of whom had biological children. Pauline M. Baker

grantor's power to revoke or amend, unless (A) a contrary intention of the testator or grantor is demonstrated by clear and convincing evidence, or (B) distribution of the estate or under the will or under the inter vivos instrument has been or will be made pursuant to court order entered prior to October 1, 1991 . . . ."

[3] The testator's sister, Mary W. Merrow, who was living at the time that the testator executed his original will, predeceased the testator. The testator expressly noted in the first codicil that he had taken that unfortunate contingency into account when he drafted his will and noted that her death resulted in an adjustment to the beneficiaries' respective interests.

had three biological children. One of Pauline M. Baker's children, William Baker, adopted Weiss, who was born in April, 1946, and was placed for adoption with William Baker and his wife in or around February, 1947. Weiss' adoption was approved by the Hartford Probate Court on March 19, 1948. Harriet M. Landon had one biological daughter, Elizabeth M. Landon, who had no biological children. Elizabeth M. Landon adopted Fass in 2008, when Elizabeth M. Landon was eighty-five years old and Fass was fifty-three years old.

The trust provides in relevant part: "If any of the original beneficiaries or their successors in interest as herein determined shall die either before or after my death leaving issue, the interest of the one so dying shall thereafter be held upon the same terms for the benefit of such issue, <u>per stirpes</u>. If any of the original beneficiaries or their successors in interest as herein determined shall die either before or after my death leaving no issue, the interest of the one so dying shall thereafter be held upon the same terms for the benefit of [the] other beneficiaries then living and/or their issue or successors . . . in the same proportions in which they would inherit from the one so dying without issue if he or she were unmarried under the laws covering the distribution of intestate estates then in force in the State of Connecticut; it being my intention that the beneficial interests from the institution of this trust until its termination shall devolve through the line of descent or inheritance without including husbands or wives of any of the beneficiaries so that at the termination hereof the distributees shall all be descendants of one or more of the original named beneficiaries . . . ." (Emphasis in original.)

Upon the death of William Baker in 1997, Weiss succeeded to his interest. She began receiving distributions under the trust whenever the trustee made distributions. Specifically, as her father's only child, Weiss

received the entirety of what previously had been her father's share of each distribution from the trust.[4]

After the death of Elizabeth M. Landon in 2014, the distributions that were payable to her under the trust were paid to Fass. An accounting listing Fass as a beneficiary of the trust was approved by the Probate Court in 2015. Fass received distributions from the trust from 2014 to 2019.

On or about December 5, 2019, the plaintiff filed an objection in the Probate Court to the approval of a periodic accounting of the trust. On January 6, 2020, a hearing was held by the Probate Court on the approval of the periodic accounting and the objection filed by the plaintiff. At the hearing, the plaintiff's counsel argued that the trust document did not allow for distributions of the trust proceeds to Fass because she was adopted by Elizabeth M. Landon in 2008, when Fass was an adult. Notwithstanding § 45a-731, which generally provides that an adopted person shall have the same rights of inheritance as a biological child, the plaintiff's counsel argued that the trust document did not allow for a descendant not related to the testator by blood to receive distributions from the trust. Counsel for Fass and for the other beneficiaries under the trust, including Weiss, opposed the plaintiff's objection during the hearing. The hearing on the periodic accounting was adjourned and the court ordered the parties to submit briefs on the plaintiff's objection.

On June 9, 2020, the Probate Court rejected the plaintiff's argument that the narrow exceptions to § 45a-731

---

[4] When Weiss' aunt, Ellen E. Baker, died in 2005 without issue, Weiss also received the entirety of what previously had been her aunt's share of the distributions from the trust. The testator made specific provisions for a beneficiary dying without issue. In such a circumstance, distributions would be paid under the laws covering the distribution of intestate estates then in effect in Connecticut. Weiss was the only person who inherited from Ellen E. Baker under Connecticut's intestacy laws.

(4) that are set forth in § 45a-731 (11) were applicable. Accordingly, the Probate Court approved the periodic accounting presented to it, thereby allowing Fass and Weiss to continue receiving distributions under the trust.

On July 9, 2020, pursuant to General Statutes § 45a-186,[5] the plaintiff appealed to the Superior Court. In her complaint, the plaintiff alleged that the Probate Court erroneously concluded that there was insufficient evidence of the testator's intent to exclude adopted persons. She also argued that a 1949 Probate Court decree (1949 decree) "definitively established that the beneficiaries entitled to distribution under the will were those individuals expressly named in the will and their descendants of the blood and not by adoption, whether then living or thereafter born, prior to the final termination of the continuing trust under the will."

On February 28 and March 18, 2022, Fass and Weiss, respectively, filed motions for summary judgment. They claimed that § 45a-731 (4), which provides that the terms "issue" and "descendants," when used in a will or trust, are to include legally adopted persons, applied to the testator's will that created the subject trust. They claimed that the exceptions to § 45a-731 (4) set forth in § 45a-731 (11) did not apply. Specifically, they argued that the plaintiff failed to establish by clear and convincing evidence that the testator had intended to exclude adopted persons from taking under the trust or that the trust had been distributed prior to October 1, 1991.

On April 6, 2022, the plaintiff filed a motion for summary judgment. She argued that subdivisions (1) through (9) of § 45a-731 were inapplicable because the exceptions to their application, set forth in § 45a-731

---

[5] General Statutes § 45a-186 (b) provides in relevant part: "Any person aggrieved by an order, denial or decree of a Probate Court may appeal therefrom to the Superior Court. . . ."

(11), applied. In particular, she claimed that the exception set forth in § 45a-731 (11) (B) was satisfied because the testator died before October 1, 1959, and the 1949 decree was a "court order entered prior to October 1, 1991," that distributed the estate. The plaintiff further claimed that the exception set forth in § 45a-731 (11) (A) also was satisfied because the testator's intent to exclude adopted persons was clear and unequivocal. As a result, the plaintiff argued that § 45a-731 (4) was inapplicable to the distributions at issue and that the court was required to give the words in the testator's will their ordinary meaning at the time the will was written and when the testator died. The plaintiff argued that the law at the time the will was written and when the testator died required the court to construe the will to exclude adopted persons as potential beneficiaries because the testator used the terms "issue" and "descendants" without any expression of an intent to include adopted persons. The plaintiff claimed that those terms, as they were ordinarily understood in 1946 and 1947, meant only " 'lineal blood relationships' . . . ." (Citation omitted.)

On January 24, 2023, the court, *Sicilian, J.*, issued a memorandum of decision granting the motions for summary judgment filed by Fass and Weiss, and denying the motion for summary judgment filed by the plaintiff. The court concluded that the exceptions set forth in § 45a-731 (11) did not apply to the undisputed facts of this case and, therefore, Fass and Weiss were entitled to distributions under the trust. The court rejected the plaintiff's contention that § 45a-731 (11) (B) applied by its plain terms because the testator's estate was distributed to trusts pursuant to the 1949 decree. The court stated that, "[p]lainly, there has been no final distribution of the assets of the estate to the beneficiaries of the trusts, and the testamentary trust has remained under the jurisdiction of the Probate Court

and, as evidenced by the decree challenged in this probate appeal, the Probate Court has been presented with periodic accountings seeking approval of distributions to be made."

The court further explained that, contrary to the plaintiff's contention, § 45a-731 (11) (B) does not unambiguously require a court to apply the outmoded " 'stranger to the adoption' " presumption to exclude adopted children from the class of beneficiaries of the trust for purposes of distributions neither made nor approved prior to October 1, 1991. The court reasoned that "[t]he legislature has made clear that its intent is to have adopted children treated equally with biological children, absent a clearly expressed contrary intent and except where doing so would disrupt distributions previously made pursuant to a court order. Section 45a-731 (11), if interpreted to exempt every testamentary trust that was subject to a probate decree prior to October 1, 1991, from the application of the modern presumption favoring adopted persons would significantly undermine the legislature's clearly expressed intention." The court thus concluded that § 45a-731 (11) (B) "applies, in the context of testamentary trusts established prior to October 1, 1991, only to trust distributions made or approved to be made pursuant to court order entered prior to that date."

With respect to the exception set forth in § 45a-731 (11) (A), the court concluded that the plaintiff had failed to prove by clear and convincing evidence that the testator intended to exclude adopted persons from the class of beneficiaries created under the trust. Specifically, the court was not persuaded by the plaintiff's argument that a testator's failure to expressly include adopted persons in the trust constituted clear and convincing evidence of an intention to exclude them. The court concluded that such a "proposition [was] untenable" and "would contravene the legislature's intention

as reflected in § 45a-731 (4) and . . . (11).” In so concluding, the court noted that “[the plaintiff] herself appear[ed] to acknowledge the problem with her argument when she [said]: ‘It is possible the legislature, in adopting [§ 45a-731 (11)] expected that there be some additional evidence beyond the isolated use of the words recited in [§ 45a-731 (4)].’ ” The court explained that “it is more than possible,” as “[t]he plain import of § 45a-731 (4) and . . . (11), and of its predecessor statutes dating back to 1959, was to change the presumption of exclusion of adopted persons to a presumption of inclusion of adopted persons.”

The court went on to reject each of the plaintiff’s additional arguments. Specifically, the court was not persuaded by the plaintiff’s argument that the addition of the word “the” in the first codicil implied anything about adopted persons. Nor was it persuaded by the plaintiff’s contention that the provision of the will excluding spouses of the descendants of the testator’s siblings shed any light on the testator’s intention regarding adopted persons. Accordingly, the court concluded that the “[the plaintiff] fail[ed] to provide clear and convincing evidence that the testator intended to exclude adopted persons as beneficiaries of the trust at issue.” This appeal followed. Additional facts and procedural history will be set forth as necessary.

As a preliminary matter, we set forth the appropriate framework for appellate review of a summary judgment determination. Practice Book § 17-49 provides: “The judgment sought shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.”

“In deciding a motion for summary judgment, the trial court must view the evidence in the light most

favorable to the nonmoving party." (Internal quotation marks omitted.) *Doe* v. *New Haven*, 214 Conn. App. 553, 563, 281 A.3d 480 (2022). "[T]he moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle [her] to a judgment as a matter of law." (Internal quotation marks omitted.) *Ramirez* v. *Health Net of the Northeast, Inc.*, 285 Conn. 1, 11, 938 A.2d 576 (2008). "[W]e must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Internal quotation marks omitted.) *Cefaratti* v. *Aranow*, 321 Conn. 637, 645, 138 A.3d 837 (2016). Our review of the trial court's rulings on the parties' motions for summary judgment is plenary. See, e.g., *Community Renewal Team, Inc.* v. *United States Liability Ins. Co.*, 128 Conn. App. 174, 177, 17 A.3d 88, cert. denied, 301 Conn. 918, 21 A.3d 463 (2011). Because the resolution of this appeal requires us to interpret § 45a-731 (11), which sets forth the exceptions to § 45a-731 (4), we are presented with an issue of statutory interpretation over which our review also is plenary. See, e.g., *Doe* v. *West Hartford*, 328 Conn. 172, 181, 177 A.3d 1128 (2018) ("[w]hen we are called upon to construe a statute that is implicated by a summary judgment motion, our review is plenary").

Before we turn to the merits of the plaintiff's claims, we begin with a brief history and overview of the law governing the inheritance rights of adopted persons in Connecticut. Prior to 1959, "[w]here the grantor or testator [was] the adopting parent, it [was] reasonable to presume that the adopted child was within the intended bounty of such grantor or testator." (Internal quotation marks omitted.) *Middletown Trust Co.* v.

*Gaffey*, 96 Conn. 61, 71, 112 A. 689 (1921). That presumption, however, did not apply to a grantor or testator who was not the adopting parent. See *Mooney* v. *Tolles*, 111 Conn. 1, 9, 149 A. 515 (1930). Connecticut courts "presumed that an adopted child [was] not within the intended bounty of a settlor who, as a nonadopting parent, [was] a stranger to the adoption." *Schapira* v. *Connecticut Bank & Trust Co.*, 204 Conn. 450, 455, 528 A.2d 367 (1987). "[T]he common law favor[ed] ancestral blood and [would] presume that the settlor did not intend that a stranger to his blood take." *Connecticut Bank & Trust Co.* v. *Bovey*, 162 Conn. 201, 207, 292 A.2d 899 (1972). This has become known as the "stranger to the adoption" doctrine. *Mooney* v. *Tolles*, supra, 9.

In 1959, the legislature enacted No. 106 of the 1959 Public Acts (P.A. 106),[6] a predecessor of § 45a-731, which effectively abrogated the "stranger to the adoption" rule by replacing the common-law presumption against including adopted persons as beneficiaries of a will or trust with a presumption that adopted persons were intended to be included as beneficiaries. By the plain terms of P.A. 106, which was codified at General Statutes (Cum. Supp. 1961) § 45-65a, however, the legislature limited that statute's application to wills and trusts executed "subsequent" to October 1, 1959. See, e.g., *Parker* v. *Mullen*, 158 Conn. 1, 5 n.1, 255 A.2d 851 (1969); *Connecticut Bank & Trust Co.* v. *Hills*, 157 Conn. 375, 378 n.1, 254 A.2d 453 (1969). Our courts therefore declined to apply § 45-65a retroactively to instruments executed prior to October 1, 1959. See, e.g.,

---

[6] "Number 106 of the 1959 Public Acts provided in pertinent part: 'The words "child", "children", "issue", "descendant", "descendants", "heir", "heirs", "lawful heirs", "grandchild", "grandchildren", when used in the singular or plural in any will or trust instrument, shall, unless such document clearly indicates a contrary intention, include legally adopted persons. . . . The provisions of this act shall apply to wills and trust instruments executed subsequent to the effective date hereof.' " *Connecticut National Bank & Trust Co.* v. *Chadwick*, 217 Conn. 260, 264 n.2, 585 A.2d 1189 (1991).

*Connecticut Bank & Trust Co.* v. *Bovey*, supra, 162 Conn. 209 ("we once again must refuse to hold . . . [§] 45-65a applicable retrospectively"). In 1973, the legislature enacted No. 73-156, § 21, of the 1973 Public Acts (P.A. 73-156), which repealed § 45-65a but specifically retained the statutory presumption in favor of adopted persons; see P.A. 73-156, § 14; which was subsequently codified at General Statutes (Rev. to 1975) § 45-64a (4).

For more than thirty years, the statutory presumption in favor of adopted persons continued to apply only to wills and trust instruments executed after October 1, 1959. In 1991, however, the legislature transferred the provisions of § 45-64a to § 45a-731 and made substantive changes to the law. Specifically, No. 91-83 of the 1991 Public Acts (P.A. 91-83) provides in relevant part that "[t]he provisions of subdivisions (1) to (9), inclusive, of [§ 45a-731]" shall apply "to the estate or wills of persons dying *prior* to October 1, 1959 . . . ." (Emphasis added.) Although the legislature expanded the presumption in favor of adopted persons to estates or wills of persons dying prior to October 1, 1959, it created two exceptions to this new rule. See P.A. 91-83. Specifically, P.A. 91-83 provides that subdivisions (1) through (9) of § 45a-731 would apply to the estate or wills of persons dying prior to October 1, 1959, "unless (A) a contrary intention of the testator or grantor is demonstrated by clear and convincing evidence or (B) distribution of the estate or under the will or under the inter vivos instrument has been or will be made pursuant to court order entered prior to October 1, 1991 . . . ."

As previously explained in this opinion, P.A. 91-83 transferred the statutory provisions governing the rights of adopted persons to § 45a-731. The relevant provisions of § 45a-731 for purposes of this appeal are located at § 45a-731 (4), (10), and (11). To that end, § 45a-731 provides in relevant part: "A final decree of adoption,

whether issued by a court of this state or a court of any other jurisdiction, shall have the following effect in this state . . . (4) The adopted person shall, except as hereinafter provided, be treated as if such adopted person were the biological child of the adoptive parent for purposes of the applicability of all documents and instruments, whether executed before or after the adoption decree is issued, which do not expressly exclude an adopted person in their operation or effect. The words 'child', 'children', 'issue', 'descendant', 'descendants', 'heir', 'heirs', 'lawful heirs', 'grandchild' and 'grandchildren', when used in any will or trust instrument shall include legally adopted persons unless such document clearly indicates a contrary intention. . . ."

Section 45a-731 provides in relevant part: "(10) Except as provided in subdivision (11) of this section, the provisions of law in force prior to October 1, 1959, affected by the provisions of this section shall apply to the estates or wills of persons dying prior to said date and to inter vivos instruments executed prior to said date and which on said date were not subject to the grantor's power to revoke or amend . . . ."

Section 45a-731 (11) instructs that "[t]he provisions of subdivisions (1) to (9), inclusive, of this section shall apply to the estate or wills of persons dying prior to October 1, 1959, and to inter vivos instruments executed prior to said date and which on said date were not subject to the grantor's power to revoke or amend, unless (A) a contrary intention of the testator or grantor is demonstrated by clear and convincing evidence, or (B) distribution of the estate or under the will or under the inter vivos instrument has been or will be made pursuant to court order entered prior to October 1, 1991 . . . ." General Statutes § 45a-731 (11).

With this background and overview of the relevant statutory provisions in mind, we turn to the plaintiff's claims on appeal.

I

The plaintiff first claims that the court erred in rendering summary judgment for the defendants because it improperly concluded that § 45a-731 (4) applies to the trust. Specifically, she directs this court to the 1949 decree, which she claims "ascertained the distributees under the will and directed that the 'rest, residue and remainder of said estate be distributed, transferred and paid over to and among the distributees above named according to law and the provisions of the will of said decedent.' " (Emphasis omitted.) She contends that, "[u]pon issuance of the 1949 decree, the class of potential distributees under this will was fixed by order of the Probate Court," and that "adopted persons could not be added to the class of potential beneficiaries after the 1949 decree was issued." In the plaintiff's view, once the Probate Court issued its 1949 decree identifying the distributees under the will, and once distribution was made to the trust pursuant to that decree, "the rights of the biological descendants were fixed and vested . . . ." (Citation omitted.) Accordingly, the plaintiff argues that the 1949 decree clearly falls within the exception set forth in § 47a-731 (11) (B) because that decree constitutes a court order entered "prior to October 1, 1991" pursuant to which "distribution of the estate or under the will . . . has been or will be made . . . ."

The defendants disagree. Weiss takes issue with the plaintiff's contention that all the interests in the trust were "vested" by operation of the 1949 decree. Weiss points out that the 1949 decree did not vest any interest in the plaintiff or in any of the original beneficiaries of the trust, rather, that the distribution in the 1949 decree was only a distribution to the trustee of the trust. Weiss notes that the trust remains subject to the jurisdiction of the Probate Court and the beneficiaries of the trust continue to receive distributions. She argues that the

trial court properly construed the exception in § 45a-731 (11) (B) in the context of a testamentary trust to apply " 'only to trust distributions made or approved to be made pursuant to a court order entered prior to [October 1, 1991].' "

Fass similarly argues that it is clear that the trust was not distributed for purposes of the exception set forth in § 45a-731 (11) (B) by virtue of the 1949 decree because future trust distributions remained subject to the ongoing jurisdiction and accounting approvals of the Probate Court. Fass argues that the plaintiff's contention that the 1949 decree constitutes a distribution for purposes of § 45a-731 (11) (B) runs counter to the legislature's clear intent to make § 45a-731 (4) retroactive to all estates or wills of persons dying prior to October 1, 1959. She further contends that the plaintiff's interpretation would result in an extremely narrow application of the statute's retroactive presumption in favor of adopted persons. The better and more logical interpretation of § 45a-731 (11) (B), Fass argues, is that it applies only to a final distribution to a beneficiary that was made prior to October 1, 1991, not to distributions to a testamentary trust that, by the terms of the trust, will result in future distributions to beneficiaries occurring after October 1, 1991. For the reasons that follow, we agree with the defendants and conclude that the presumption in favor of adopted persons set forth in § 45a-731 (4) applies to the trust and distributions at issue in this appeal.

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . The meaning of a statute shall, in the first instance, be ascertained from the text of the statute

itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. General Statutes § 1-2z." (Citation omitted; internal quotation marks omitted.) *Seramonte Associates, LLC* v. *Hamden*, 345 Conn. 76, 83–84, 282 A.3d 1253 (2022).

Section 45a-731 provides in relevant part that "(11) [t]he provisions of subdivisions (1) to (9), inclusive, of this section shall apply to the estate or wills of persons dying prior to October 1, 1959 . . . unless . . . (B) distribution of the estate or under the will or under the inter vivos instrument has been or will be made pursuant to court order entered prior to October 1, 1991 . . . ." The term "distribution" is not defined in § 45a-731 or elsewhere in chapter 803 of the General Statutes. As such, we must construe the term according to its commonly approved usage, mindful of any peculiar or technical meaning it may have assumed in the law. See General Statutes § 1-1 (a). Indeed, in the absence of statutory definitions, we often "find evidence of such usage, and technical meaning, in dictionary definitions, as well as by reading the statutory language within the context of the broader legislative scheme." *State* v. *Menditto*, 315 Conn. 861, 866, 110 A.3d 410 (2015); see also *Ledyard* v. *WMS Gaming, Inc.*, 338 Conn. 687, 697, 258 A.3d 1268 (2021) ("in the absence of statutory definitions, we look to the contemporaneous dictionary definitions of words to ascertain their commonly approved usage").

Contemporary to the 1991 amendment of § 45a-731, the word "distribution," in the probate context, was defined as "[t]he apportionment and division, under authority of a court, of the remainder of the estate of an intestate, after payment of the debts and charges,

*among those who are legally entitled to share in the same.*" (Emphasis added.) Black's Law Dictionary (6th Ed. 1990) p. 475. More generally, the term "distribution" meant "the act or process of distributing" or "something distributed . . . ." Webster's Ninth New Collegiate Dictionary (1990) p. 368.

We conclude that the plain language of § 45a-731 (11), in the context of the entire statute, evinces a clear legislative intent that adopted persons are to be presumptively treated the same as biological children for purposes of inheritance under estates or wills of persons dying prior to October 1, 1959. Indeed, subdivision (11) makes clear that the substantive provisions of the statute that require equal treatment of adopted persons (i.e., subdivisions (1) through (9) of § 45a-731) shall apply to the estates or wills of those dying prior to October 1, 1959, unless one of two narrow exceptions apply. As to the exception in § 45a-731 (11) (B), we conclude that the language makes clear the legislature's intent that subdivisions (1) through (9) of § 45a-731 shall apply to the estates or wills of those dying prior to October 1, 1959, but not to the extent that such an application of those subdivisions would disturb or otherwise invalidate a final distribution *to a beneficiary* that occurred *prior* to October 1, 1991, the effective date of the provision. See Black's Law Dictionary, supra, p. 475 (defining "[d]istribution" in probate context as "[t]he apportionment and division, under authority of a court, of the remainder of the estate of an intestate, after payment of the debts and charges, *among those who are legally entitled to share in the same*" (emphasis added)).

In applying § 45a-731 to the facts of this case, we must reject the plaintiff's argument that the 1949 decree, which transferred the "rest, residue and remainder" of the estate to the trustee (i.e., so that the trustee could

later make distributions in accordance with the testamentary trust), constitutes a distribution for purposes of § 45a-731 (11) (B) so as to require application of the outmoded "stranger to the adoption" rule to all trust distributions occurring after October 1, 1991. Although the 1949 decree in this case transferred to the trustee the "rest, residue and remainder" of the estate, that decree did not finalize the apportionment and division of the remainder of the estate under the will, as distributions to those who would be entitled to share in the remainder of the estate under the testamentary trust were still to occur into the future. As the trial court aptly noted, "the testamentary trust has remained under the jurisdiction of the Probate Court and, as evidenced by the decree challenged in this probate appeal, the Probate Court has been presented with periodic accountings seeking approval of distributions to be made."

Furthermore, the plaintiff's contention that the 1949 decree "affirm[ed] the identity of the distributees . . . and distribution was made pursuant to that [decree] [and] that the rights of the biological descendants were fixed and vested" at that time must also be rejected. Other than these threadbare assertions, the plaintiff has not sufficiently explained or demonstrated how the decree vested any interest in any beneficiary of the trust, let alone named or otherwise vested any interest in her. Rather, the record shows that the 1949 decree simply transferred to the trustee the rest, residue and remainder of the estate so that the trustee, in turn, could make distributions from the estate to the proper beneficiaries. Although the plaintiff attempts to support her arguments by pointing to a few cases; see, e.g., *Middletown Trust Co.* v. *Gaffey,* supra, 96 Conn. 61; those authorities are inapposite to the facts of the present case and the question presented in this appeal.

The trust at issue, like many testamentary trusts, provides that distributions are to be made on a periodic basis into the future, with the beneficiaries under the trust continually changing upon the birth and/or death of the testator's descendants. Although various distributions "of the estate or under the will" were made prior to October 1, 1991; General Statutes § 45a-731 (11) (B); other distributions were made and approved after that date, including the distribution that the plaintiff challenges in this appeal. Given the nature of a testamentary trust so described, we agree with the Superior Court that, in a case like this, § 45a-731 (11) (B) applies only to *trust* distributions made or approved to be made pursuant to a court order entered prior to October 1, 1991. In other words, pursuant to the exception, subdivisions (1) through (9) of § 45a-731 do not apply to trust distributions made or approved to be made to a beneficiary pursuant to a court order entered prior to October 1, 1991. However, subdivisions (1) through (9) of § 45a-731 are generally applicable to trust distributions of a person who died prior to October 1, 1959, that occur after October 1, 1991.

Although the plaintiff would have us interpret the statute to mean that subdivisions (1) through (9) of § 45a-731 have no application to a testamentary trust of a person dying prior to October 1, 1959, if *any* transfer is made from an estate to a testamentary trust prior to October 1, 1991, so as to exempt from the modern presumption favoring adopted persons any and all testamentary trust distributions made after October 1, 1991, such an interpretation effectively would render the retrospective provision in § 45a-731 (11) a nullity. Under the plaintiff's interpretation, there effectively would be no retrospective application of subdivisions (1) through (9) to an estate or under a will of a person dying prior October 1, 1959, except in instances in which administration of the estate or under the will remained in limbo,

until at least October 1, 1991—a period of not less than thirty-two years after such person's death. It is axiomatic, however, that the legislature does "not intend to promulgate statutes . . . that lead to absurd consequences or bizarre results"; (internal quotation marks omitted) *Dias* v. *Grady*, 292 Conn. 350, 361, 972 A.2d 715 (2009); and "that reviewing courts should not construe statutes in disregard of their context and in frustration of the obvious legislative intent or in a manner that is hostile to an evident legislative purpose . . . or in a way that is contrary to common sense." (Internal quotation marks omitted.) *State* v. *Banks*, 321 Conn. 821, 842, 146 A.3d 1 (2016). Accordingly, we conclude that the Superior Court properly determined that the exception set forth in § 45a-731 (11) (B) was inapplicable in this case.[7]

## II

The plaintiff next claims that, even if the exception in § 45a-731 (11) (B) does not apply, the exception in § 45a-731 (11) (A) applies because there is clear and convincing evidence that the testator did not intend to include adopted persons as beneficiaries under the trust. In support of that claim, she argues that the testator's use of the terms "issue" and "descendants" in the trust, without any reference to adopted persons, is clear

[7] In her appellate brief, the plaintiff makes a passing reference to a claim that she has been deprived of property without due process of law. Although the plaintiff asserted in her appeal to the Superior Court that the Probate Court's interpretation of § 45a-731 rendered that statute unconstitutional, she did not pursue a constitutional claim in her motion for summary judgment, her objection to the defendants' motions for summary judgment, or in her appellate brief before this court. Because this claim was neither decided by the Superior Court nor adequately briefed before this court, we deem that constitutional claim abandoned. See, e.g., *JPMorgan Chase Bank, National Assn.* v. *Virgulak*, 192 Conn. App. 688, 720 n.9, 218 A.3d 596 (2019) ("[t]o the extent that the plaintiff's few passing references in its appellate brief about the court's decision . . . can be read to challenge that decision, we conclude that the plaintiff abandoned such argument as a result of an inadequate brief"), aff'd, 341 Conn. 750, 267 A.3d 753 (2022).

and convincing evidence that he intended to exclude such persons as beneficiaries. She also argues that the testator's addition of the word "the" in the first codicil to the trust demonstrates a clear intent by the testator to exclude adopted persons as beneficiaries under the trust. We are not persuaded.

Section 45a-731 provides in relevant part that "(11) [t]he provisions of subdivisions (1) to (9), inclusive, of this section shall apply to the estate or wills of persons dying prior to October 1, 1959, and to inter vivos instruments executed prior to said date and which on said date were not subject to the grantor's power to revoke or amend, unless (A) a contrary intention of the testator or grantor is demonstrated by clear and convincing evidence . . . ."

Here, the parties dispute the retroactive application of the definitions set forth in § 45a-731 (4). That subdivision provides in relevant part that the words " 'issue' " and " 'descendants,' " "when used in any will or trust instrument shall include legally adopted persons unless such document clearly indicates a contrary intention." General Statutes § 45a-731 (4).

In order for the exception set forth in § 45a-731 (11) (A) to apply, therefore, the plaintiff must show that there is clear and convincing evidence that the testator did not intend for adopted persons to be included as beneficiaries under the testator's trust. Our courts have explained that "[c]lear and convincing proof is a demanding standard denot[ing] a degree of belief that lies between the belief that is required to find the truth or existence of the [fact in issue] in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution." (Internal quotation marks omitted.) *Blackwell* v. *Mahmood*, 120 Conn. App. 690, 700, 992 A.2d 1219 (2010). A plaintiff may sustain her burden "if evidence induces in the mind of the trier a reasonable

belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist." (Internal quotation marks omitted.) *Notopoulos* v. *Statewide Grievance Committee*, 277 Conn. 218, 226, 890 A.2d 509, cert. denied, 549 U.S. 823, 127 S. Ct. 157, 166 L. Ed. 2d 39 (2006).

The plaintiff argues that the testator's use of the words "issue" and "descendants," alone, is clear and convincing evidence that the testator did not intend for adopted persons to be included as beneficiaries under the trust because an adopted person was not among the class of persons constituting "issue" or "descendants" when the testator executed his will in 1946. The plaintiff contends that "the testator was a knowledgeable businessman, with a keen and sophisticated understanding of the law, and a savvy and careful reviewer of legal documents," and that "the testator's intent to include only lineal blood descendants is clear beyond peradventure." (Emphasis omitted.)

Contrary to the plaintiff's contention, there was no rule of law at the time the will was executed in 1946 excluding adopted persons from the definitions of "issue" or "descendants." Under the common law, there existed merely a *presumption* against including an adopted person within the definitions of "issue" or "descendants" when a testator's intent with respect to that question was unclear. See, e.g., *Trowbridge* v. *Trowbridge*, 127 Conn. 469, 473–74, 17 A.2d 517 (1941); *Ansonia National Bank* v. *Kunkel*, 105 Conn. 744, 751, 136 A. 588 (1927). Indeed, "[w]here no intent to include the adopted child [could] be ascertained, the common law favor[ed] ancestral blood and [would] *presume* that the settlor did not intend that a stranger to his blood take." (Emphasis added.) *Connecticut Bank & Trust Co.* v. *Bovey*, supra, 162 Conn. 207. Our Supreme Court made clear, though, that this presumption was "merely

an aid to construction"; id.; "which cannot prevail over an intent fairly deducible from the terms of the will read in the light of the surrounding circumstances." *Trowbridge* v. *Trowbridge*, supra, 474.

Although the presumption in effect around the time the testator executed his will led to some courts interpreting terms, like the term "issue," to exclude adopted persons; see, e.g., *Bankers Trust Co.* v. *Pearson*, 140 Conn. 332, 356, 99 A.2d 224 (1953); that presumption is no longer the lens through which we review the testamentary language. The statutory amendment that the legislature adopted in 1991 altered that presumption. See P.A. 91-83. As a result of that amendment, we now presume that the terms "issue" and "descendants" *include* legally adopted persons when we are interpreting instruments that control distributions made in accordance with a will or an estate of a person that died prior to October 1, 1959. In light of that statutory change and the legislature's clear intent to reverse and replace the old presumption that treated adopted and biological children differently, we are not persuaded that the legislature intended for its new presumption to be rebutted by virtue of an instrument's mere reference to terms such as "issue" or "descendants" that, under the prior common-law presumption, excluded adopted persons.

Moreover, the plaintiff's argument that the testator's use of the terms "issue" and "descendants" in the trust constitutes clear and convincing evidence of an intent to exclude adopted persons because the old common-law presumption excluded them conflates the actual intent of a testator with a rule of construction. The decision in *Purifoy* v. *Mercantile-Safe Deposit & Trust Co.*, 398 F. Supp. 1075, 1079 (D. Md. 1974), aff'd, 567 F.2d 268 (4th Cir. 1977), speaks directly to this point. In *Purifoy*, the court addressed a nearly identical issue, namely, whether the term "descendants," as well as the

terms "child" and "children," included an adopted child in various testamentary instruments that were at issue. (Internal quotation marks omitted.) Id., 1077. The defendants, like the plaintiff in this case, argued that the testator clearly intended to exclude an adopted child from the terms "child" or "children" because the law in place when the testator executed the testamentary instruments excluded such persons and the testator was presumed to know the law when he executed the will at that time. Id., 1079.

The court rejected that claim, noting that the defendants' argument "fail[ed] to properly distinguish between the *actual* intent of the testator in employing the words in question and the meaning that a rule of construction assigns to them. . . . [F]or these words to reflect a clear actual intention, this [c]ourt would have to make the unwarranted assumption that the testator actually considered the contingency of adoption in choosing the words. The defendants, though, find actual intention in a combination of the terms 'child,' 'children,' etc. and the rule of construction prior to 1947, which excluded adopted children of one other than the testator. In other words, the defendants would have an earlier rule of construction, without anything else, become part of the testator's actual intent so as to defeat the retroactive application of a subsequent and conflicting rule of construction. By definition, a rule of construction is not synonymous with or a part of the actual intent of the testator. Its function is to assign a meaning to the words when the testator's actual intention cannot be determined, and only after the failure to find an intention can a rule of construction be considered. . . . Therefore, since the testators used only the words 'child,' 'children,' and 'descendants' and since the will and surrounding circumstances fail to reveal that the contingency of adoption was ever considered, no actual intention of the testator concerning adopted

children is present. The meaning to be ascribed to the words in question is to be found in one of the two applicable rules of construction." (Citations omitted; emphasis added; footnote omitted.) Id.

The court in *Purifoy* was addressing competing rules of construction created by statute—the defendants in that case advocated for the earlier rule of construction, whereas the plaintiff argued that the later rule of construction must be applied. Id. Here, by contrast, the plaintiff pits a prior common-law presumption against a more recent, statutory presumption. The rationale of *Purifoy*, however, applies equally. The plaintiff attempts to equate the common-law presumption about the meaning of the terms "issue" and "descendants" with the actual intention of the testator. In the words of the *Purifoy* court, this "[she] clearly cannot do." Id., 1079 n.3.

Section 45a-731 (11) changed the lens through which the terms at issue here must be examined. Although the terms "issue" and "descendants" may have been presumed at the time the will was executed in 1946 to include only lineal descendants when no contrary intent could be discerned from the instrument, the use of these terms in a will or trust, in the absence of evidence that the testator actually considered the contingency of adoption, does not provide the requisite quantum of proof (i.e., clear and convincing evidence) that the testator actually intended to treat adopted persons differently from biological children. In other words, the use of the terms "issue" or "descendants" in a will or trust, without more, does not suffice to satisfy the new statutory burden of showing, by clear and convincing evidence, the testator's actual intention that adopted persons be treated differently from biological children.

In a final effort to show by clear and convincing evidence that the testator in this case intended to

exclude adopted persons from receiving distributions pursuant to the trust, the plaintiff points to the testator's first codicil, in which the testator added the word "the" into the trust document. The language so amended provides in relevant part: "If any of the original beneficiaries or their successors in interest as herein determined shall die either before or after my death leaving no issue, the interest of the one so dying shall thereafter be held upon the same terms for the benefit of *the* other beneficiaries then living and/or their issue or successors . . . in the same proportions in which they would inherit from the one so dying without issue if he or she were unmarried, under the laws covering the distribution of intestate estates then in force in the State of Connecticut . . . ." (Emphasis added.)

The plaintiff argues that the addition of the word "the," which did not appear in the original will but was considered of such importance by the testator that it was added in the first codicil, "clearly define[s] the connecting words 'other beneficiaries then living and/or their issue or successors," evincing an intent by the testator to limit the class of distributees under the will to the originally named ten individuals that he named and their lineal blood descendants. We are not persuaded. As the trial court correctly noted, the addition in the first codicil of the clarifying word "the" implies nothing about adopted persons and certainly does not constitute clear and convincing evidence of an intention to exclude them. Although the plaintiff attempts to show the testator's intent to exclude adopted persons by pointing to other areas of the will, those attempts fall short for the same reasons. Nothing to which the plaintiff points us speaks to the testator's intention regarding adopted persons.[8]

---

[8] The plaintiff makes numerous references throughout her briefing to this court suggesting that Fass' adult adoption was a sham or otherwise improper. The plaintiff made no such claim in her complaint and presented no evidence to the Probate Court or to the Superior Court in support such a claim. In addition, she fails adequately to brief any such claim on appeal. We therefore

On the basis of the foregoing, we conclude that neither of the exceptions in § 45a-731 (11) are satisfied in this case and, therefore, the interpretation of the testamentary trust at issue is governed by § 45a-731 (4), which provides that the terms "issue" and "descendants" as used in the trust include legally adopted persons. Accordingly, we conclude that the Superior Court properly granted the defendants' motions for summary judgment and denied the plaintiff's motion for summary judgment.

The judgment is affirmed.

In this opinion the other judges concurred.

---

deem her claim, to the extent she is making one to that effect, abandoned.

We further note that, to the extent the plaintiff's arguments can be read as calling into question the validity of adult adoptions in general, Connecticut law expressly permits them. See General Statutes § 45a-734. Furthermore, to the extent that the plaintiff suggests that Fass' adoption as an adult supports her claim concerning the testator's intention to exclude adopted persons, that argument also lacks merit. Fass' adoption in 2008, as an adult, is not evidence of the testator's intent to exclude adopted persons when he executed his will and codicils more than fifty years earlier. This is especially true in light of the fact that Connecticut has recognized adult adoptions since as early as 1918, many years prior to the testator's death. See General Statutes (1918 Rev.) § 4882 ("Any person of full age may, by written agreement with another person of full age younger than himself, unless such other person is his or her wife, husband, brother, sister, uncle or aunt of the whole or half blood, adopt such other person as his child, *provided*, such written agreement be approved by the court of probate for the district in which the adopting parent resides or, if such adopting parent is not an inhabitant of this state, for the district in which adopted person resides. . . . Such child by virtue of such adoption shall inherit estate from its adopting parent or parents, or the relatives of such adopting parent or parents, the same as though such adopted child were the natural child of such adopting parent or parents, and shall not inherit estate from his or her natural parents or relatives . . . ." (Emphasis in original.))